**DYNAMIC SPORTS FITNESS COR-PORATION OF AMERICA, INC., t/a The Sports Club, Appellant,**

v.

**The COMMUNITY YMCA OF EAST-ERN DELAWARE COUNTY, The Ridley Area YMCA Branch.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2000.
Decided Feb. 1, 2001.

Fred Greenberg, Media, for appellant.

Joseph T. Mattson, Havertown, for appellee.

Before COLINS, Judge, SMITH, Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Dynamic Sports Fitness Corporation of America, Inc., t/a The Sports Club (Sports Club) appeals from the order of the Court of Common Pleas of Delaware County (trial court) that sustained the preliminary objections of The Community YMCA of Eastern Delaware County, Ridley Area YMCA Branch (YMCA) and dismissed the Sports Club's complaint against the YMCA. The Sports Club's complaint sought declaratory and injunctive relief under the Institutions of Purely Public Charity Act (Act), Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385. We affirm.[1]

On November 2, 1998, the Sports Club filed a complaint against the YMCA alleging, among other things, that it is a taxpaying "small business," as defined by the Act, operating a health (exercise) club within three miles of the YMCA, an "institution of purely public charity," as defined by the Act. The complaint further alleges that the YMCA was in the process of expanding its own "health club" facilities to create a state-of-the-art health club in direct competition with the Sports Club. The Sports Club alleges that the YMCA's planned expansion of its facilities entitles the Sports Club to injunctive relief under the Act.

The complaint sets forth two claims. First, it contends that the YMCA's proposed expansion allegedly violates the Act's "prohibition" against institutions of purely public charity from owning, operating, or financing a commercial business or substantially expanding a pre-existing commercial business. The complaint alleges that the YMCA's health club activities do not constitute a charitable purpose as defined by Section 5(b) of the Act, 10 P.S. § 375(b), and that the Act is designed to protect small businesses such as the Sports Club from direct competition from charities that engage in non-charitable, commercial enterprises. The complaint therefore alleges that the YMCA's proposed expansion of its athletic facilities violates the Act to the Sports Club's detriment. The second count assumes, in the alternative, that the YMCA's health facilities do comport with a charitable purpose. The complaint alleges, however, that the expansion of these facilities impermissibly permits the YMCA to use its tax-exempt status to compete unfairly with a small business, such as the Sports Club, in violation of the Act. The complaint seeks injunctive and other unspecified equitable relief and, in the alternative, a declaratory judgment.

The YMCA filed preliminary objections to the complaint in the nature of a demurrer. The YMCA argued that the trial court lacked subject matter jurisdiction over the Sports Club's claims and, in the

1. This matter was originally appealed to the Superior Court, which transferred the matter to this Court by published opinion at 751 A.2d 670 (Pa.Super.2000).

alternative, argued that the Sports Club's claims failed to state a cause of action upon which relief could be granted. Specifically, the YMCA argued that the Act does not authorize a person or entity other than a political subdivision to challenge whether an activity of a purely public charity is a charitable purpose under Section 5(b) of the Act. Thus, according to the YMCA's argument, the trial court lacked subject matter jurisdiction over the claim. The YMCA also argued that the Act only permits a small business to allege unfair competition by demonstrating that the challenged activity of the public charity is not related to a charitable purpose set forth in the charity's charter or governing legal documents. The Sports Club, by contrast, alleged only that the YMCA's expansion was not related to a charitable purpose set forth in Section 5(b) of the Act. The trial court agreed with both arguments of the YMCA, sustained the preliminary objections, and dismissed the complaint. This appeal followed.

 Our scope of review of an appeal from an order sustaining preliminary objections in the nature of a demurrer is to determine whether on the facts alleged in the complaint, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993). In making this review, we must accept as true all well-pled allegations of material fact averred in the complaint, as well as all inferences reasonably deduced therefrom. *Id.* Any doubts must be resolved in favor of overruling the demurrer. *Id.* The Sports Club argues that the trial court erred when it held that it lacked subject matter jurisdiction to review the allegations raised in its complaint and further erred by concluding that the Sports Club did not properly set forth a cause of action under the Act.

We are unaware of any previous appellate court decision involving a suit brought under the Act by a private entity. Indeed, there are, in general, very few appellate court decisions that reference the Act at all.[2] A brief review of the Act would therefore be in order.

The Act is primarily intended to establish guidelines for taxing authorities when confronted with the question of whether a "charitable institution" and its property are exempt from taxation. It is not, as the Sports Club appears to suggest, designed primarily to address the concerns of private businesses. Section 2 of the Act, 10 P.S. § 372, sets forth the "Legislative intent" behind the Act. This section describes the General Assembly's recognition of the importance of "institutions of purely public charity" to the life of the Commonwealth and adopts a continuation of the "historic policy"of exempting these institutions from taxation. It explains, however, that a lack of specific legislative standards defining what entities constitute "institutions of purely public charity" has led to confusion and unnecessary litigation between traditionally tax-exempt institutions and political subdivisions to the public's detriment. Accordingly, Section 2(b) provides:

It is the intent of the General Assembly to eliminate inconsistent application of eligibility standards for charitable tax exemptions, reduce confusion and confrontation among traditionally tax-exempt institutions and political subdivisions and ensure that charitable and public funds are not unnecessarily diverted from the public good to litigate eligibility for tax-exempt status by providing standards to be applied uniformly in all proceedings throughout this Commonwealth for determining eligibility for exemption from State and local taxation which are consistent with traditional legislative and judicial applications of the constitutional term "institutions of purely public charity."[3]

**2.** The Act generally became effective on November 26, 1997.

**3.** The reference to "the constitutional term 'institutions of purely public charity' " in Section 2(b) of the Act pertains to Article VIII,

The Act sets forth the "Criteria for institutions of purely public policy." They are as follows: (1) the institution must advance a charitable purpose; (2) the institution must operate entirely free from a private profit motive; (3) the institution must donate or render gratuitously a substantial portion of its services; (4) the institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity; and (5) the institution must relieve the government of some of its burden. Section 5(a)-(f) of the Act, 10 P.S. § 375(a)-(f).[4] The Act defines "institution of purely public charity" as a domestic or foreign nonprofit corporation, association, trust, or similar entity that meets these five criteria. Section 3 of the Act, 10 P.S. § 373.

As pertains particularly to the case before us, Section 5(b) provides in pertinent part:

The institution must advance a charitable purpose. This criterion is satisfied if the institution is organized and operated primarily to fulfill any one or combination of the following purposes:

(1) Relief of poverty.

(2) Advancement and provision of education. . . .

(3) Advancement of religion.

(4) Prevention and treatment of disease or injury, including mental retardation and mental disorders.

(5) Government or municipal purposes.

(6) Accomplishment of a purpose which is recognized as important and beneficial to the public and which advances social, moral or physical objectives.

Previously, the General Assembly had defined "Charitable purposes" under Section 5103 of the Nonprofit Corporation Law of 1988, 15 Pa.C.S. § 5103, as "[t]he relief of poverty, the advancement of education, the advancement of religion, *the promotion of health,* governmental or municipal purposes, and other purposes the accomplishment of which is beneficial to the community." (Emphasis added.) As pertains to the case before us, the legislature had modified "promotion of health" under the Nonprofit Corporation Law of 1988 to the arguably more restrictive criterion, "prevention and treatment of disease or injury," under the Act.[5]

Virtually all sections of the Act concern the relationship between institutions of purely public charity and political subdivisions or other related matters, mostly involving taxation. Only Section 8 of the Act, 10 P.S. § 378, pertains to the relationship between institutions of purely public charity and private small businesses. Section 8(a) provides that "[i]t is the policy of this act that institutions of purely public charity shall not use their tax-exempt status to compete unfairly with small business."[6] This section then sets forth a "General rule" that "[a]n institution of purely public charity may not fund, capitalize, guarantee the indebtedness of, lease obligations of or subsidize a commercial business that is unrelated to the institution's charitable purpose as stated in the institution's charter or governing legal documents." 10 P.S. § 378(b). The sec-

---

Section 2(a)(v) of the Pennsylvania Constitution, which provides that the General Assembly may, by law, exempt "institutions of purely public charity" from taxation.

**4.** These five criteria mirror those established by our Supreme Court in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985). The Act then further defines and quantifies these criteria to meet its goal of establishing uniform standards for addressing the issue of whether an entity qualifies as an institution of purely public charity.

**5.** We note that Section 14(b) of the Act, 10 P.S. § 384(b), provides that "[a]ll other acts and parts of acts are repealed insofar as they are inconsistent with this act" except for a certain section of The General County Assessment Law, not relevant to our inquiries.

**6.** "Small business" is defined under Section 3 of the Act.

tion then sets forth several exceptions to the general rule, including a "grandfather" provision that provides:

An institution of purely public charity that prior to the effective date of this section funded, capitalized, guaranteed the indebtedness of, leased obligations of or subsidized a commercial business may continue to own and operate such businesses without violating subsection (b) as long as the institution does not substantially expand the scope of the commercial business. In the event an injunction is issued under subsection (i), the effect of such injunction shall be limited to restraining the substantial expansion of the scope of the commercial business which was initiated after the effective date of this section.

10 P.S. § 378(h). "Commercial business" is defined in the Act as the "sale of products or services that are principally the same as those offered by an existing small business in the same community." 10 P.S. § 373.

Subsection (i) pertains to procedures and remedies for allegedly aggrieved small businesses. The remedy process begins with mandatory arbitration administered by the Department of State upon the filing by a small business of a complaint with the Department. The arbitrator is charged with initially making a determination that the complaint sets forth a prima facie case that a violation of Section 8 has occurred. 10 P.S. § 378(i)(5). If the complainant has set forth a prima facie case, the arbitrator shall then determine whether a violation of Section 8 has actually occurred by, among other things, reviewing "all relevant law

... regulations, and the charter or governing legal documents of the institution of purely public charity." 10 P.S. § 378(i)(6). The arbitrator's decision shall set forth findings of fact and conclusions of law and "may include an order or injunction as part of the decision, provided that no damages may be assessed against an institution of purely public charity." 10 P.S. § 378(i)(7). The parties may then agree that the arbitrator's decision shall be entered as a final judgment in the court of common pleas. Either party, however, may file for a de novo appeal with the court of common pleas within thirty days of the arbitrator's decision.[7] 10 P.S. § 378(i)(9).

In general, the issue before us is whether the Sports Club alleged "prima facie evidence that a violation" of Section 8 "has occurred" and that the Sports Club is damaged thereby. 10 P.S. § 378(i)(5). Preliminarily, however, we must address the issue asserted by the trial court and argued before us by the YMCA that the trial court lacked jurisdiction to review the allegations set forth in the Sports Club's complaint.

■ The test of whether a court has jurisdiction over a controversy is whether the court is competent to determine controversies of the general class to which the case presented for consideration belongs. *Department of Public Welfare v. Court of Common Pleas of Philadelphia County*, 506 Pa. 410, 485 A.2d 755 (1984). This is a completely different question from the question of a party's standing to bring an action or assert a claim, whether the plain-

7. In this case, the Sports Club filed a complaint with the Department of State, and the matter was assigned to an arbitrator. The arbitrator determined that the Sports Club failed to set forth a prima facie case for two reasons. First, the Sports Club failed to attach the charter or governing documents of the YMCA to its complaint, thereby failing to establish that the complained of activity of the YMCA is unrelated to the YMCA's charitable purpose as stated in such documents, as required by Section 8(b). Second, the Sports Club's complaint failed to allege that the complained of activity was unrelated to the YMCA's charitable purpose as stated in its charter or governing documents. Rather, the complaint alleged that the YMCA's activities were not related to a charitable purpose as defined by the Act. The arbitrator concluded that he was without jurisdiction to consider that argument. The Sports Club thereafter filed a timely appeal with the trial court for a de novo determination.

tiff's complaint is demurrable, whether the plaintiff can establish his or her claims, or whether the court should ultimately conclude that the relief sought should not be granted. *Studio Theaters, Inc. v. City of Washington,* 418 Pa. 73, 209 A.2d 802 (1965).

■ The trial court clearly has jurisdiction to review the Sports Club's claims. Aside from the general grant of unlimited jurisdiction to the courts of common pleas for all actions and proceedings, except as established by statute or general rule, set forth in Section 931 of the Judicial Code, 42 Pa.C.S. § 931, the Act itself specifically provides that controversies arising under Section 8 may be appealed to the courts of common pleas. 10 P.S. § 378(i)(9).[8] The YMCA's jurisdiction argument appears to be more accurately an argument that the Sports Club *lacked standing* to challenge whether the YMCA's activities met the criteria for institutions of purely public charity set forth in Section 5(b) of the Act, or that the Sports Club's interpretation of Section 8(b) is erroneous. The trial court therefore erred by concluding that it lacked jurisdiction to review the Sports Club's allegations. Nevertheless, its decision must be affirmed on other grounds.

■ Section 8 provides, as it pertains to the case before us, that an institution of purely public charity may not fund a commercial business "unrelated to the institution's charitable purpose as stated in the institution's charter or governing legal documents." 10 P.S. § 378(b). If the institution had prior to the effective date of the Act already been engaged in the funding of a commercial business, it would not be in violation of subsection (b) unless it "substantially" expands the "scope" of that business. 10 P.S. § 378(h). The Sports Club alleges that the YMCA's health club

facilities are a commercial business and that its proposed expansion of its facilities substantially expands the scope of that business. It alleges in Count I that this commercial business is not related to any charitable purpose as set forth in Section 5 of the Act, and it alleges in Count II that even if the YMCA's health facilities are related to a charitable purpose, the YMCA is using its tax-exempt status to compete unfairly with the Sports Club, allegedly in violation of Section 8(a).

We note at the outset that the Sports Club's Count II very plainly does not set forth a cause of action under Section 8. Section 8 does not provide for separate causes of action under both subsections (a) and (b), rather it provides for one cause of action as set forth in subsection (b). Subsection (a), which is entitled "Intent," merely describes the General Assembly's intent behind its passage of Section 8, that institutions of purely public policy should not use their tax-exempt status to unfairly compete with "small business." This language does not provide that a small business may bring an action against an institution of purely public charity simply on the grounds that the charity is using its tax-exempt status to support unfair competition with the business. Rather, in reading Section 8 in its entirety, it is apparent that the legislative intent articulated in subsection (a) is implemented through subsection (b), entitled "General rule," as modified by subsections (c) through (h) where appropriate.[9] Thus, Section 8 provides, generally, that an aggrieved small business may seek redress only when it is adversely affected by an institution of purely public charity that funds, capitalizes, guarantees the indebtedness of, leases obligations of, or subsidizes a commercial business (or substantially ex-

---

**8.** Indeed, the courts of common pleas would have jurisdiction over controversies arising under other sections of the Act as well.

**9.** We note that in construing a statute, headings of sections and other divisions may be used to aid the construction thereof. Section

1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924. Also, a court may not disregard the plain language of a statute under the pretext of pursuing its "spirit." 1 Pa.C.S. § 1921(b).

pands the scope of such business following the effective date of Section 8) that is unrelated to the institution's charitable purpose as stated in its charter or governing documents. The Sports Club's Count II does not therefore set forth an action under Section 8.

■ The Sports Club's Count I is more tailored to a Section 8 cause of action. It alleges, tangentially, that the YMCA's health-club activities are unrelated to the charitable purposes set forth in its Articles of Incorporation. Count I does not allege that the YMCA's Articles of Incorporation are completely devoid of articulated purposes related to the YMCA's health club facilities, however. Rather, it alleges that although the YMCA's health club activities do relate to the purposes set forth in the YMCA's Articles of Incorporation, such purposes are not of themselves "charitable" as defined by Section 5(b) of the Act. The Sports Club argues that the only purposes set forth in the YMCA's Articles of Incorporation that are allegedly related to the YMCA's health club facilities pertain to those purposes concerning the "promotion of health." The Sports Club argues that the promotion of health is not a "charitable purpose" as defined by Section 5(b) of the Act, and therefore the YMCA's proposed expansion of its health club facilities violates Section 8(b). The YMCA counters that the Sports Club, through this argument, impermissibly challenges the YMCA's status as an "institution of purely public charity," a challenge that the YMCA alleges only political subdivisions may make under the Act. Therefore, the YMCA argues, it is irrelevant whether its Articles of Incorporation set forth a supporting purpose that comports

with the Section 5(b) criteria. It contends that the language of Section 8(b) restricts a court (or arbitrator) to an examination of the governing documents of an established institution of purely public charity, and if such documents provide authority for the complained-of activity, then the small business has failed to set forth a cause of action under Section 8.[10] The Sports Club replies that unless its interpretation of subsection (b) is valid, an institution of purely public charity may insert any commercial activity into its charter or governing documents and thereby compete unfairly against small businesses with impunity.

■ The Sports Club is correct in arguing that in construing Section 8(b), a court or an arbitrator must take guidance from Section 5(b). Again, Section 8(b) provides that an institution of purely public charity may not engage in a commercial business "that is unrelated to the institution's *charitable purpose* as stated in the institution's charter or governing documents." 10 P.S. § 378(b) (emphasis added). "Charitable purpose" is delineated, if not conclusively defined, in Section 5(b) of the Act.[11] It is a tenet of statutory construction that if a statute provides an internal definition for a term, then the statute must be construed according to that definition, not by a definition arising from common law or a prior statute. 1 Pa.C.S. § 1903(a); *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983). With this understanding, we must examine whether the alleged commercial business of the YMCA (its health club facilities) is "unrelated to" the YMCA's "charitable purpose" as stated in its Articles of Incorporation.

The YMCA's Amended Articles of Incorporation [12] provide in relevant part that it

10. We note that the YMCA does not contest the Sport's Club's characterization of its proposed expanded health club as a commercial business. Indeed, the YMCA's health club activities, as alleged by the Sports Club, fit the definition of "commercial business" under Section 3 of the Act.

11. The term "charitable purpose" is not included among the Act's Section 3 "Definitions" but is explained at Section 5(b) of the Act.

12. The YMCA's Amended Articles of Incorporation were not attached to the Sports Club's complaint, but appear in the record as an

is incorporated under the Pennsylvania Nonprofit Corporation Law for the following purposes:

 (a) To establish and maintain a fellowship rooted in traditional and historical Judeo/Christian principles for the development of healthy spirit, mind and body;

 (b) To put into practice the aforesaid principles through programs that promote good health (both physical and mental), strengthening of family ties and values, citizenship, adult and youth leadership, individual awareness and worth, good character, volunteerism, and national and international understanding;

 (c) To offer the aforesaid programs to all people of all ages, races, sex, ethnicity, religion or creed, and regardless of one's ability to pay;

 (d) To act as an Association of members working together to improve the quality of life for all people of the community;

 (e) To conduct such charitable and educational activities in furtherance of its duties as contemplated by Section 501(c)(3) of the Internal Revenue Code....

*See* Exhibit A to YMCA's Affidavit Pursuant to Delaware County Rule of Civil Procedure 1028.2(b).

It is quite clear that the YMCA's alleged health club, though a commercial business as defined by the Act, *is* related to the charitable purposes set forth in its Amended Articles of Incorporation. Those purposes involve the development of an individual's healthy spirit, mind, and body through a variety of programs and activities, including the attainment of physical health. Contrary to the Sports Club's arguments, these purposes are charitable in nature. Section 5(b)(6) of the Act provides that charitable purposes include those unspecific purposes that are "recognized as important and beneficial to the public" and

that advance "social, moral or physical objectives." It cannot be gainsaid that the purposes of the YMCA as set forth in its Amended Articles of Incorporation meet the criteria of this section. In this regard, we note that our courts have consistently recognized the charitable nature of the Commonwealth's YMCAs. *See Young Men's Christian Ass'n of Germantown v. City of Philadelphia,* 323 Pa. 401, 187 A. 204 (1936); *City of Pittsburgh v. Board of Property Assessment, Appeals and Review,* 129 Pa.Cmwlth. 69, 564 A.2d 1026 (1989), *petition for allowance of appeal denied,* 525 Pa. 587, 575 A.2d 117 (1990).

The Sports Club's argument is based not upon a thorough reading of the YMCA's purposes as set forth in its Amended Articles of Incorporation, but upon a narrow dissection of those purposes; that is, that the "promotion of health" is not on its own a charitable purpose. The Articles, however, do not provide for its general charitable mission *and* also a separate purpose relating to the "promotion of health." Rather, the YMCA's promotion of "physical health" is related to and intertwined as an integral part with its general charitable mission as set forth in its Amended Articles of Incorporation. Nothing in the Act supports the Sports Club's argument that an institution's purposes are to be torn apart and examined beyond the context of the whole to make a determination that one piece, on its own, may or may not be charitable in nature. Our inquiry ends under Section 8(b) if the complained-of commercial activity "is related to" the charitable purposes set forth in the institution's charter or governing documents. There is no question that the YMCA's operation of athletic facilities is related to its charitable mission as set forth in its Amended Articles of Incorporation.

We also note that Section 5(b) does not preclude the consideration of "promotion of health" as a charitable purpose. Although the General Assembly did modify its definition of "charitable purpose" in the

attachment to the YMCA's preliminary objections.

Act from its prior definition in the Non-profit Corporation Law to not specifically include "promotion of health," it nevertheless did not specifically exclude the promotion of health as a possible charitable purpose. Section 5(b)(6) of the Act provides a general category to include purposes that are recognized as important and beneficial to the public that advance social, moral, or physical objectives. Certainly, the promotion of health may fall under this category if the circumstances warrant, as they do here. In coming to this conclusion, we take note of the reasoning and observations of the California Court of Appeals, which construed the charitable nature of the YMCA's athletic facilities in *Clubs of California for Fair Competition v. Kroger*, 7 Cal.App.4th 709, 717–19, 9 Cal.Rptr.2d 247, 252–53 (1992) [13]:

> We have no hesitation in saying that athletic programs and facilities may serve a charitable purpose; they not only benefit the physical health of participants but improve the quality of life in a community.... In this respect, an athletic center serves a purpose similar to the civic theater .... Both athletics and the theater are important cultural expressions that promote emotional, mental, and, in the case of athletics, physical well-being. The golden age of ancient Greece is remembered both for Sophocles and the Olympic games. It would be arbitrary to say that art deserves more support than sports; the two involve different dimensions of the life of the individual as well as the community. The public interest demands that the community offer both outlets to the creative energies of its citizens....
>
> [In this regard, w]e note that nearly all cities of any size have a parks and recreation department with responsibility to maintain playing fields and other athletic facilities.... We see no clear

distinction between athletic activities and physical fitness programs. One of the public benefits of athletics lies in promoting physical health; and physical activities often have an element of play similar to athletics. ... [O]ur municipal parks sometimes provide jogging paths or exercise stations. To the extent that physical fitness programs place particular emphasis on the goal of health, they equally serve a charitable purpose.... The physical education programs in our schools and the existence of a President's Council on Physical Fitness attest to the social interest in cultivating physical strength and vigor among our citizens.

> The promotion of health requires preventative measures as well as treatment of the ill; all public health programs from the federal to local level in fact provide programs ranging from vaccination to health education.... [YMCA] programs, such as cardiovascular workouts, serve a closely related goal by helping to maintain physical wellness. Whether or not such programs come strictly within the rubric of preventative medicine, they serve an essentially similar social interest....

*See also City of Washington v. Board of Assessment Appeals of Washington County*, 550 Pa. 175, 704 A.2d 120 (1997) (an institution advances a charitable purpose if it benefits the public from an educational, religious, moral, *physical*, or social standpoint).

The Sports Club has therefore failed to set forth a prima facie case of a Section 8 violation in its complaint. Count I of the complaint fails to allege that the YMCA's alleged commercial health-club business is unrelated to the YMCA's charitable purposes as set forth in its governing documents.[14] Count II of the complaint incor-

---

**13.** In this case, private physical fitness clubs brought an action to compel the county tax assessor to include a new YMCA building on the county tax rolls. The court ruled that the YMCA's property was entitled to tax exemp-

tion because it was used for "charitable purposes."

**14.** We would further note that Count I also fails to allege that the YMCA is substantially

rectly attempts to set forth a cause of action under Section 8(a), which does not provide for a cause of action by a small business. Accordingly, the Sports Club complaint was correctly dismissed. The trial court is therefore affirmed.

### ORDER

AND NOW, this 1st day of February, 2001, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed.

Judge SMITH dissents.

expanding the "scope" of its alleged commercial business pursuant to Section 8(h). The complaint alleges only that the YMCA is modernizing and expanding the *size* of its facilities, not that it is changing the nature, object, or character of its activity. Thus, the "scope" of the YMCA's health club activities remains the same. We do not read Section 8 as prohibiting institutions of purely public charity, who support commercial activities that have been "grandfathered" under Section 8(h), from modernizing these enterprises as the times require. *See West Allegheny Hospital v.* *Board of Property Assessment,* 500 Pa. 236, 243, 455 A.2d 1170, 1173 (1982) (courts must recognize the "evolving institutional needs" of institutions of purely public charity in light of the changing limits of public and private generosity). *See also City of Pittsburgh,* 564 A.2d at 1030 ("The YMCA cannot continue to provide fitness facilities that consist solely of the medicine balls and wrestling mats of by-gone days. In order to attract a revenue generating membership, it must maintain a viable public presence which reflects current fitness trends.").