The MEDICAL SHOPPE, LTD., d/b/a
Northeast Med–Equip and d/b/a
Stephens Pharmacy, Appellant,

v.

WAYNE MEMORIAL HOSPITAL,
Wayne Memorial Health System, Inc.,
and Wayne Memorial Hospital Foun-
dation, Inc.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2004.

Decided Jan. 7, 2005.

Geff Blake, Scranton, for appellant.

Donald E. Wieand, Jr., Lehigh Valley, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The Medical Shoppe, Ltd., d/b/a Northeast Med–Equip and d/b/a Stephens Pharmacy (Stephens Pharmacy) appeals an order of the Court of Common Pleas of Wayne County (trial court) denying its request to enjoin the operations of a competing pharmacy pursuant to the Institutions of Purely Public Charity Act, Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385 (Act 55). Stephens Pharmacy asserted that the Waymart Pharmacy, affiliated with the Wayne Memorial Hospital, Wayne Memorial Health System, Inc., and the Wayne Memorial Hospital Foundation, Inc. (collectively herein, the Hospital Defendants) [1] unfairly competes with the Stephens Pharmacy and other small businesses in violation of Section 8 of Act 55, 10 P.S. § 378. Thus, Stephens Pharmacy sought to enjoin further operations of the Waymart Pharmacy.

Stephens Pharmacy is a Pennsylvania for-profit corporation engaged in the durable medical equipment, home health care, and retail pharmacy businesses with its principal place of business in Honesdale, Pennsylvania. The Wayne Memorial Health System, Inc. is a non-profit corporation exempt from federal income taxes pursuant to Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Included in the system is Wayne Memorial Hospital, also a 501(c)(3) non-profit corporation, and several related affiliates. One affiliate is Wayne Memorial Health Foundation, Inc.,[2] a non-profit corporation whose primary purpose is to provide financial support to the non-profit affiliates through fund raising and other activities. Each of the Hospital Defendants is governed by a separate board of directors.

Wayne Health Services, Inc. is a for-profit corporation whose stock is wholly owned by Wayne Memorial Health Foundation, Inc. On April 1, 2001, Wayne Health Services, Inc. executed a three-year lease agreement for space in a building located in the Borough of Waymart, and on the following day it registered "The Waymart Pharmacy" as a fictitious name with the Pennsylvania Department of State. Waymart Pharmacy opened for business on September 1, 2001, and as a for-profit enterprise it is not eligible for a real estate tax exemption.

Waymart Pharmacy is the only retail pharmacy in the Borough of Waymart, in which approximately 1,500 persons reside. Hospital Defendants undertook to establish a pharmacy after a two-year study that was "committed to death." Reproduced Record at 1287a (R.R. ——). The study showed that Waymart's residents, many of whom are elderly, were forced to travel to Honesdale, an eight-mile distance, or to Carbondale, a six-mile distance, to have their prescriptions filled. These distances were particular treacherous in the winter inasmuch as they involve mountain roads. The Hospital Defendants concluded that the pharmacy would provide a source of revenue and consistent

1. In their answer to the complaint, the Wayne Memorial Hospital defendants noted that the correct name of the Wayne Hospital Foundation, Inc. is the Wayne Memorial Health Foundation, Inc.

2. Wayne Memorial Health System is responsible for management of the health system and affiliated entities, including the Hospital, a nursing home, a home health service, a durable medical equipment provider, the Wayne Memorial Health Foundation, Inc., and several other affiliated organizations. Wayne Memorial Health System supplies, through contract, the services of its employees to the various affiliated entities.

with their health care mission.[3] Notably, prior to the action of Hospital Defendants, public officials had contacted a number of pharmacy owners to entice them to open a pharmacy in Waymart, but they were unsuccessful.[4]

Stephens Pharmacy is located in Honesdale, a borough with approximately 5,000 residents, that actively markets in Waymart. Prior to the opening of Waymart Pharmacy, it provided pharmaceutical services to two personal care homes in Waymart as well as to residents of Waymart. It has lost some customers to Waymart Pharmacy, but it has continued its business with the personal care homes.

On September 5, 2001, Stephens Pharmacy filed a complaint with the Pennsylvania Department of State alleging that Hospital Defendants had violated the Act 55 prohibition against non-profit corporations using their tax-exempt status to compete unfairly against small businesses.[5] Pursuant to Section 8(i)(3) of Act 55, 10 P.S. § 378(i)(3),[6] an arbitrator conducted a hearing on November 1, 2002. Thereafter, the arbitrator issued a written award and report concluding that Hospital Defendants had violated Act 55 "by virtue of their establishment, operation and subsidization of the Waymart Pharmacy in violation of Defendants' respective governing legal documents and in a manner that results in unfair competition with Plaintiff." Award of Arbitrator ¶ 1. The Award provided that the terms of the injunction would be established after each party made a presentation on the reasonable wind-up and cessation of operations of the Waymart Pharmacy.

Within weeks of the arbitrator's decision, the Waymart Borough Council adopted Resolution No. 2–2002, requesting Hospital Defendants to establish and maintain a commercial retail pharmacy within the Borough.[7] The Hospital Defendants

---

3. The boards of Hospital Defendants carefully reviewed the question of whether the pharmacy affiliate was consonant with their corporation and charitable purposes.

4. A witness for Hospital Defendants noted that because of Waymart's small size, it would take an affiliation with, and supported by, Hospital Defendants to make a pharmacy economically feasible.

5. Section 8(b) of Act 55 states:
   (b) **General rule.**—An institution of purely public charity may not fund, capitalize, guarantee the indebtedness of, lease obligations of or subsidize a commercial business that is unrelated to the institution's charitable purpose as stated in the institution's charter or governing legal documents.
   10 P.S. § 378(b).

6. This section provides, in pertinent part:
   (i) **Remedies.**—The Department of State shall establish a system of mandatory arbitration for the purpose of receiving all complaints from aggrieved small businesses relating to an institution of purely public charity's alleged violation of this section. Upon receipt of such complaint, the department shall direct that the complaint be resolved as provided in this subsection.

   ＊ ＊ ＊

   (3) Within 30 days following the period of time allotted to the institution of purely public charity to respond to the complaint, the department shall provide an unbiased and qualified arbitrator who possesses sufficient knowledge regarding such institutions to adjudicate the matter. If the institution of purely public charity does not participate in the arbitration, the arbitrator may issue an order to compel such participation. Such an order shall be enforceable by the court of common pleas in the judicial district where the arbitration takes place.
   10 P.S. § 378(i)(3).

7. Stephens Pharmacy asserts that the Borough Council resolution was drafted by Hospital counsel. The trial court concluded that a copy of a proposed resolution was prepared by counsel for Hospital Defendants to be considered and adopted by the Borough Council.

then requested the arbitrator to reconsider his earlier Award. After the submission of briefs by the parties, the arbitrator concluded that the violations of Act 55 by the Hospital Defendants were rendered permissible under Section 8(g) of Act 55, 10 P.S. § 378(g), by virtue of the Borough Council resolution.[8]

Both Stephens Pharmacy and Hospital Defendants appealed pursuant to Section 8(i)(9) [9] of Act 55, 10 P.S. § 378(i)(9). The parties agreed to have the trial court consider the case on the record created before the arbitrator, with the understanding that the trial could would review the record *de novo*, as provided by the statute, and make its own findings of fact and conclusions of law. However, Hospital Defendants then sought the opportunity to call two additional witnesses to supplement the record. Over the objection of Stephens Pharmacy, the trial court permitted Hospital Defendants to depose two additional witnesses and to submit their deposition transcripts along with the record established before the arbitrator.

■ After reviewing the record *de novo*, the trial court made findings of fact and conclusions of law that were different, in part, from those of the arbitrator. The trial court determined that because Waymart Pharmacy does not compete in the same community as Stephens Pharmacy, Hospital Defendants had not violated Act 55. The trial court also found that the Hospital Defendants were exempt from Act 55, even if a violation were to be shown, because of the Borough Council's resolution requesting Waymart Pharmacy to remain in Waymart. On October 10, 2003, the trial court held in favor of the Hospital Defendants and denied Stephens Pharmacy's request for injunctive relief. Stephens Pharmacy's appeal to this Court followed.[10]

■ Before addressing the substantive issues raised by Stephen Pharmacy, we first consider our jurisdiction to consider this appeal. Section 762 of the Judicial Code, 42 Pa.C.S. § 762, confers jurisdiction in this Court to consider appeals from the final orders of the courts of common pleas in cases involving the Commonwealth government, its officers and local government matters. It also confers jurisdiction over "certain" private, not-for-profit corpo-

---

However, Resolution No. 2–2002, was revised by the Borough Solicitor before being presented to Borough Council, where it was unanimously passed on November 25, 2002. Mrs. Lillian Rollison, Borough President of Borough Council, initiated a conversation with Hospital representatives to ascertain if there was anything she or the Council could do to keep the pharmacy in the community after she learned about the litigation filed by Stephens Pharmacy.

8. As noted, *infra*, at p. 462, an otherwise unlawful commercial business may be permitted if a political division requests the business to operate under Section 8(g) of Act 55.

9. The Act provides for an appeal from the arbitrator's award as follows:

Either party may initiate a de novo appeal from the arbitrator's decision in the court of common pleas of the judicial district in which the arbitration took place within 30 days of the arbitrator's decision.

10 P.S. § 378(i)(9).

10. Where the lower court has heard the case *de novo*, this Court's proper scope of review is to determine whether the facts found by the trial court are supported by competent evidence and to correct any conclusions of law erroneously made. *Department of Transportation, Bureau of Driver Licensing v. Boros,* 533 Pa. 214, 620 A.2d 1139 (1993). Where the issue before us involves interpretation of a statute, we are presented with a question of law, and our standard of review is *de novo*, and the scope of review is plenary as this Court may review the entire record in making its decision. *Zane v. Friends Hospital,* 575 Pa. 236, 836 A.2d 25 (2003).

ration matters. 42 Pa.C.S. § 762(a)(5). The present case has been brought by a for-profit corporation to enjoin the operations of another for-profit corporation; our jurisdiction is not obvious.

However, under Section 762(a)(5)(i) of the Judicial Code, we decide cases involving a non-profit corporation "where is drawn in question the application, interpretation or enforcement of ... any statute." 42 Pa.C.S. § 762(a)(5)(i). Section 762(a)(5)(ii) further confers jurisdiction in this Court over "all actions or *proceedings involving the corporate affairs of any corporation not-for-profit* subject to Title 15 or the affairs of the members, security holders, directors, officers or employees or agents thereof, as such." 42 Pa.C.S. § 762(5)(ii) (emphasis added).

Here we consider the interpretation and application of a statute, Act 55,[11] to Hospital Defendants, which are corporations not-for-profit.[12] Although the main thrust of Act 55 is to establish guidelines for determining whether an entity is a "purely public charity" for purposes of establishing an exemption from real property taxation, it also speaks to the question of how non-profit, tax-exempt corporations may compete in the marketplace. *Dynamic Sports Fitness Corporation of America, Inc. v. Community YMCA of Eastern Delaware County,* 768 A.2d 375, 377 (Pa.Cmwlth.

2001). Section 8(a) of Act 55, 10 P.S. § 378(a), prohibits institutions of purely public charity from using "their tax-exempt status to compete unfairly with small business." Here, we consider whether the Hospital Defendants, which are not-for-profit, are engaged in unfair competition through their affiliate, Waymart Pharmacy, in violation of Act 55. Jurisdiction is proper under 42 Pa.C.S. § 762(a)(5)(i) and (ii) because we consider the "application of a statute," Act 55, to the "corporate affairs" of not-for-profit corporations, *i.e.,* Hospital Defendants.[13]

We turn, then, to the substance of the appeal brought by Stephens Pharmacy. It contends that the trial court erred in its interpretation and application of Act 55; specifically, it notes four errors. First, the trial court erred in concluding that the towns of Waymart and Honesdale are not in the same "community" for purposes of Act 55. Second, the trial court erred in allowing the Borough Council's request to allow Waymart Pharmacy to remain in business because its business is not fulfilling a government function. Third, the trial court erred in finding that the Hospital Defendants were not subsidizing Waymart Pharmacy, in violation of their governing documents. Fourth, the trial court erred in permitting Hospital Defendants to supplement the record with

---

**11.** Prior to the enactment of Act 55 in 1997, this Court heard appeals in cases addressing whether an entity qualified as a purely public charity under Section 5020–204 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–101—5020–602, a predecessor to Act 55. In cases under the earlier law a local government unit was a party, and our jurisdiction was clear. In the present case, both parties are private entities and the central issue of the case does not affect any government agency.

**12.** Although the purpose of Stephens Pharmacy was to enjoin the operation of Waymart Pharmacy, it was not the named defendant. The not-for-profit affiliates of Waymart Pharmacy were the named defendants. As noted, the "corporate affairs" of non-profit corporations are within this Court's jurisdiction. 42 Pa.C.S. § 762(a)(5)(ii).

**13.** This is not to say that every controversy involving a for-profit corporation, such as Waymart Pharmacy, should be brought in this Court simply because it is owned by a non-profit corporation.

two depositions.[14] We consider these points *seriatim.*

This case turns on the meaning of Section 8 of Act 55, 10 P.S. § 378, which prohibits tax exempt entities from competing unfairly with small businesses in no uncertain terms.[15] Section 8(a) of Act 55 provides:

> It is the policy of this act that institutions of purely public charity shall not use their tax-exempt status to compete unfairly with small business.[16]

10 P.S. § 378(a). Section 8(b) further states that, as a "general rule,"

> [a]n institution of purely public charity may not fund, capitalize, guarantee the indebtedness of, lease obligations of or subsidize *a commercial business* that is unrelated to the institutions charitable purpose as stated in the institutions charter or governing legal documents.

10 P.S. 378(b) (emphasis added). Nevertheless, the remainder of Section 8 lists six exceptions to the proscription against a purely public charity using its tax-exempt status to compete unfairly. 10 P.S. 378(c)-(h). Here, the relevant exception is that found in subsection (g), which permits an institution of purely public charity to engage in a commercial business if invited to do so by state or local government. 10 P.S. 378(g).

The trial court found that the Hospital Defendants did not violate the prohibition set forth in Section 8(b) because, regardless of whether it was being subsidized by Hospital Defendants, Waymart Pharmacy was not a "commercial business." As defined in Act 55, a "commercial business" is

> [t]he sale of products or services that are principally the same as those offered by an existing small business *in the same community.*

Section 3 of Act 55, 10 P.S. § 373 (emphasis added). The trial court concluded that Waymart Pharmacy was not selling products and services in the "same community" served by Stephens Pharmacy.[17]

The record was well developed on the factual question of what was meant by the "Waymart community." The testimony was that the "Waymart community" extended beyond Borough lines into surrounding townships. There was no evidence, however, that it extended as far as Honesdale. The testimony was that citizens of Waymart do not consider themselves to be part of Honesdale. This was supported by the facts that Waymart has its own police department, sewer authority, ambulance corps, waste company, post office and volunteer fire company. Way-

---

14. Hospital Defendants deposed Lillian Rollison, President of Waymart Borough Council, who testified as to the reasons for and procedure in Borough's Council passage of Resolution 2–2002. The second deposition was that of Thomas J. Shepstone, a former Chairman of the Wayne Memorial Health System Board, who testified as to the reason why the pharmacy was opened in Waymart.

15. The Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, provides: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

16. "Small business" is defined in Act 55 as

> Any self-employed individual, sole proprietorship, firm, corporation, partnership, association or other entity that:
> (1) has fewer than 101 full-time employees; and
> (2) is subject to income taxation under the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971.

10 P.S. § 373.

17. Seven pharmacies are closer to Waymart Pharmacy than Stephens Pharmacy.

mart and Honesdale, separated by eight miles and one mountain,[18] each belong to separate school districts.

"Community" is not defined in Act 55. Where nontechnical words are not defined in a statute, courts should construe them in accordance with common usage. 1 Pa. C.S. § 1903(a); *Commonwealth v. Brachbill,* 520 Pa. 533, 540, 555 A.2d 82, 86 (1989). Accordingly, the trial court looked to the dictionary, which defines "community"[19] Relying on WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY[20] the trial court concluded that a community involves a particular area where persons have common social, economic and political interests.

Stephens Pharmacy argues that the trial court's interpretation of "community" should be rejected. It contends that "community" should be construed as the business market of the existing small business, noting that it had customers in Waymart in spite of its location in Honesdale. This is not a persuasive argument. Waymart residents have previously had to travel to Honesdale for their prescriptions because there was no pharmacy in Waymart. Further, in the information age, "business market" is an unbounded term, rendering the statutory limitation of "community" meaningless. The legislature could have used the term "business market" in Sec-

tion 8(b) instead of "community;" alternatively, it could have defined "community" to mean "business market." It did neither.

We hold that the trial court properly applied the common meaning of "community" to the facts of record in reaching its conclusion that Waymart Pharmacy and the Stephens Pharmacy do not serve the same community. Therefore, Hospital Defendants did not violate the prohibition against unfair competition set forth in Section 8(b) of Act 55, 10 P.S. § 378(b).

In any case, both the arbitrator and the trial court found that Waymart Pharmacy satisfied the exception in Section 8(g) because the Borough of Waymart, by formal resolution, invited Waymart Pharmacy to continue its presence in the Waymart community.[21] We consider, then, the next error of law asserted by Stephens Pharmacy, which turns on the meaning of Section 8(g) of Act 55. It states:

(g) **Government function.**—An institution of purely public charity may engage in a new commercial business that may otherwise be in violation of subsection (b) if the institution is formally requested to do so by the Commonwealth or a political subdivision.

Section 8(g) of Act 55, 10 P.S. 378(g).

■ Stephens Pharmacy argues that the statutory prohibition against unfair

---

18. Prior to the opening of the Waymart Pharmacy, residents of Waymart traveled to Honesdale or to Carbondale to fill prescriptions. Carbondale required travel across the Fairview Mountain on a road that proved dangerous in winter.

19. Under case law, "community" is a term that has different meaning, depending on the circumstances of each case. *Commonwealth v. Pilosky,* 239 Pa.Super. 233, 362 A.2d 253, 256 (1976).

20. The trial court relied upon the following excerpt from Webster's definition of "community:"

the people with common interests living in a particular area; an interacting population of various kinds of individuals ... in a common location; and a body of persons ... having common social, economic and political interests.
WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 267 (1987).

21. The Borough of Waymart Council president, as well as citizens of the Borough, all testified to their desire to have the Hospital Defendants' affiliate, Waymart Pharmacy, remain.

competition by non-profits should not be defeated simply by convincing a municipality to request the establishment of the offensive enterprise. In any case, it argues that the new commercial business must be invited by the government before it begins. Further, the invited commercial business must provide a "government function," consistent with the heading of Section 8(g).

■ The Statutory Construction Act of 1972 teaches that a heading "shall not be considered to control but may be used to aid in the construction thereof." 1 Pa.C.S. § 1924. The case law explains that a heading is to be given consideration in the limited situation where "the plain words of the statute are ambiguous, and, even in those cases, is not conclusive." *Pennsylvania School Boards Association, Inc. v. Public School Employees' Retirement System*, 804 A.2d 737, 743 (Pa.Cmwlth.2002). The simple declarative sentence that makes up subsection (g) is unambiguous: it permits the continuation of an otherwise impermissible commercial business, where it is invited to do so by a political subdivision. Were we to follow the statutory interpretation offered by Stephens Pharmacy, we would allow the title of subsection (g) to trump the unequivocal and simple message of the text. This we cannot do.

Stephens Pharmacy also contends that governmental intervention must be the impetus to the founding of the otherwise unlawful commercial business; otherwise, it is simply too easy to transform an impermissible enterprise into a lawful one. However, there is no time limit to the government request stated in Section 8(g).

Stephens Pharmacy's real quarrel is with the policy decision of the legislature, but it is beyond this Court to make a different one.

Resolution 2–2002 is precisely the kind of local government action that was contemplated by the legislature when it enacted the exception in Section 8(g) of Act 55. The exceptions have been identified by the legislature for good reason. Restraints on trade are generally anathema. It would be inappropriate for non-profits to abuse their charitable, tax-exempt status to enter into businesses unrelated to their charitable mission and potentially distort the commercial marketplace. On the other hand, Act 55 does not give *cart blanche* authority to small businesses to block the entrants of competitors that have an affiliation with charitable non-profits.

■ Next, we consider whether the Hospital Defendants violated their governing documents in establishing and supporting their affiliate, Waymart Pharmacy. The record shows that the Hospital Defendants provide employee support, including that of pharmacists, to operate Waymart Pharmacy. However, Waymart Pharmacy reimburses the Hospital for that labor at commercially reasonable rates. Opinion ¶¶ 19–22.[22] The record supports the trial court's finding in this regard. Further, we agree with the trial court that the operation of Waymart Pharmacy is related to the charitable mission set forth in the governing documents of the Hospital Defendants. The Hospital Defendants exist to provide a complete range of health services to the community, and operation of the retail pharmacy has proven to serve a genuine need. Opinion at ¶¶ 17–18.

---

22. The trial court found that Waymart Pharmacy is not using any of the Hospital Defendant's tax exemptions to subsidize its operation. Hospital employees receive a higher reimbursement on prescriptions filled at Waymart Pharmacy. This reimbursement is a function of the employee benefit plan. It benefits neither the Hospital nor Waymart Pharmacy.

■ Finally, we consider the claim of Stephens Pharmacy that the trial court was precluded from considering evidence in addition to that presented to the arbitrator. Section 8(i)(9) of Act 55 provides:

Either party may initiate a *de novo appeal from the arbitrator's decision in* the court of common pleas of the judicial district in which the arbitration took place within 30 days of the arbitrator's decision.

10 P.S. § 378(i)(9) (emphasis added). Stephens Pharmacy asserts that the term "de novo appeal" is not the same as a *de novo hearing,* and, therefore, the trial court was limited to the record made before the arbitrator.

■ This court has considered the meaning of a *de novo* review. We have explained as follows:

The difference between *de novo* review and appellate review is significant. Under *de novo* review, the reviewing tribunal conducts an independent fact-finding proceeding in which new evidence is taken and all issues are determined anew. Under appellate review, the reviewing tribunal examines the record to determine whether the agency's findings are reasonably supported by substantial evidence.

*Manor v. Department of Public Welfare,* 796 A.2d 1020, 1029 n. 12 (Pa.Cmwlth. 2002). The reviewing tribunal redecides the case, substituting its judgment for that of the initial tribunal. *D'Arciprete v. D'Arciprete,* 323 Pa.Super. 430, 470 A.2d 995, 996 (1984). Further, no single procedure constitutes *de novo* review.

Pursuant to particular statutes, procedures run the gamut from excluding all previous testimony to permitting the adjudicator, in his or her discretion, to receive no additional testimony. The *sine qua non* of *de novo* review is not that the person or body conducting the review hear testimony anew; rather it is that such person or body possess and exercise the authority to arrive at an independent judgment on the matter in dispute.

*Codorus Stone & Supply Co., Inc. v. Kingston,* 711 A.2d 563, 566 (Pa.Cmwlth.1998). This authority includes the discretion to determine whether additional evidence is required to reach an independent judgment.

■ We believe that a "*de novo* appeal" and a "*de novo* review" are one and the same in the absence of differentiating language in the statute. Act 55 does not specify that the "*de novo* appeal" by the trial court must be done exclusively on the record before the arbitrator. Here, the issue before the trial court was not whether the arbitrator abused its discretion, but whether, from the evidence before the trial court in the *de novo* appeal, Stephens Pharmacy established a right to injunctive relief. It is within the discretion of the trial court to admit additional evidence that it deems relevant and necessary to make its own findings of fact and conclusions of law.[23]

For these reasons, we affirm the decision of the trial court.

**ORDER**

AND NOW, this 7th day of January, 2005, the order of the Court of Common Pleas of Wayne County dated May 13, 2004, in the above-captioned matter is hereby affirmed.

---

**23.** In this case, the additional depositions were offered in part because the Borough

Resolution was passed after the arbitrator issued his Award.