**WEST PENN ALLEGHENY HEALTH SYSTEM d/b/a Allegheny General Hospital, Petitioner**

**v.**

**MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR FUND (MCARE) and Kiana Townes, a Minor, by Tamara Blanchard, Guardian, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2010.

Decided Dec. 21, 2010.

---

Steven J. Forry, Pittsburgh, for petitioner.

Cindy E. Sheaffer, Harrisburg, for respondents.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

West Penn Allegheny Health System d/b/a Allegheny General Hospital (Allegheny General) has filed an application for summary relief in its declaratory judgment action filed against the Medical Care Availability and Reduction of Error Fund (MCARE Fund) and Kiana Townes, a minor, in this Court's original jurisdiction.

The MCARE Fund has also filed a cross-application for summary relief. We are asked to decide whether the MCARE Fund's obligation under Section 715 of "the Medical Care Availability and Reduction of Error (MCARE) Act" (MCARE Act), Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. § 1303.715, to defend and pay "extended claims" up to $1,000,000 per occurrence of a breach of contract or tort is subject to the MCARE Fund's annual aggregate liability limit set forth in other provisions of the MCARE Act and its predecessor, the Health Care Services Malpractice Act (Malpractice Act), Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§ 1301.101–1301.1004.

## I.

The issue raised by the parties involves the following statutory framework. In 2002, the Legislature repealed the Malpractice Act and enacted the MCARE Act in its place. Both Acts set forth a stated purpose to make medical professional insurance obtainable at an affordable and reasonable cost. Section 102(3) of the MCARE Act, 40 P.S. § 1303.102(3); Section 102 of the Malpractice Act, 40 P.S. § 1301.102. Similarly, each of the Acts established a fund for the payment of claims.[1] Section 712(a) of the MCARE Act, 40 P.S. § 1303.712(a), provides:

> There is hereby established within the State Treasury a special fund to be known as the [MCARE Fund]. Money in

---

1. Section 701(d) of the Malpractice Act provided in relevant part:

 There is hereby created a contingency fund [the Medical Professional Liability Catastrophe Loss Fund] for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability brought against such

 health care provider ... *to the extent such health care provider's share exceeds its basic coverage insurance in effect at the time of occurrence....* The limit of liability of the fund shall be as follows:

 (1) *For calendar years 1997 through 1998, the limit of liability of the fund shall be $900,000 for each occurrence for each health care provider and $2,700,000 per annual aggregate for each health care provider.* [Emphasis added.]

the fund shall be used to pay claims against participating health care providers [2] for losses or damages awarded in medical professional liability actions against them *in excess of the basic insurance coverage* required by section 711(d) [of the MCARE Act, 40 P.S. § 1303.711(d) ],[3] *liabilities transferred in accordance with subsection (b)* [4] and for the administration of the fund. [Emphasis and footnotes added.]

Subsection (c) goes on to provide both per occurrence and annual aggregate limits for the fund's coverage, varying in amounts for successive years. Under the MCARE Act, the MCARE Fund serves primarily as "a statutory *excess carrier* that provides excess medical malpractice insurance coverage to the extent a health care provider's liability exceeds its basic coverage in effect at the time of an occurrence." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n,* 603 Pa. 452, 454–55 n. 2, 985 A.2d 678, 680 n. 2 (2009) (emphasis added).[5]

There is no question that both the per occurrence and annual aggregate limits set out in subsection (c) apply to this *excess* coverage.

■ The issue before us arises because the MCARE Fund, like the CAT Fund under the Malpractice Act before it, assumes an additional role as a *primary insurer.* Section 715 of MCARE Act provides under the heading "**Extended claims**":

(a) **General rule.**—If a medical professional liability claim against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund [CAT Fund] under section 701(d) of the ... Malpractice Act ... is made more than *four years after the breach of contract or tort occurred and if the claim is filed within the applicable statute of limitations,*[6] the claim shall be defended by

2. A "health care provider" is defined as "[a] primary health care center or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center and ... an officer, employee or agent of any of them acting in the course and scope of employment." Section 103 of the MCARE Act, 40 P.S. § 1303.103. A "participating health care provider" is "[a] health care provider ... that conducts more than 20% of its health care business or practice within this Commonwealth or a nonparticipating health care provider who chooses to participate in the fund." Section 702 of the MCARE Act, 40 P.S. § 1303.702.

3. The term "basic insurance coverage" is defined as "[t]he limits of medical professional liability insurance required under section 711(d)." Section 702 of the MCARE Act. The term "medical professional liability insurance" is defined as "[i]nsurance against liability on the part of a health care provider arising out of any tort or breach of contract

causing injury or death resulting from the furnishing of medical services which were or should have been provided." *Id.*

4. Section 712(b) of the MCARE Act transferred the money in the CAT Fund and the CAT Fund's rights, liabilities and obligations to the MCARE Fund.

5. The MCARE Fund is funded by surcharges and assessments imposed on the participating health care providers and the income from investment. Section 712(d) and (*l*) of the MCARE Act. A health care provider who fails to timely pay the surcharges and assessments may not participate in the coverage offered by the MCARE Fund. 31 Pa.Code § 242.17; *Dellenbaugh v. Commonwealth Med. Prof'l Liab. Catastrophe Loss Fund,* 562 Pa. 558, 756 A.2d 1172 (2000).

6. A tort action must be filed within two years after the cause of action accrued. Section 5524(2) of the Judicial Code, *as amended,* 42 Pa.C.S. § 5524(2). Under the discovery rule, the applicable statute of limitations period begins to run when the plaintiff learns of an injury and its cause. *Wilson v. El–Daief,* 600

the [Insurance Department] if the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. . . .

(b) **Payment.**—If a health care provider is found liable for a claim defended by the department in accordance with subsection (a), the claim *shall be paid by the fund* [MCARE Fund]. *The limit of liability of the fund for a claim defended by the department under subsection (a) shall be $1,000,000 per occurrence.*

(c) **Concealment.**—If a claim is defended by the department under subsection (a) or paid under subsection (b) and the claim is made after four years because of the willful concealment by the health care provider or its insurer, the fund shall have the right to full indemnity, including the department's defense costs, from the health care provider or its insurer.

(d) **Extended coverage required.**— Notwithstanding subsections (a), (b) and (c), all medical professional liability insurance policies issued *on or after January 1, 2006,* shall provide indemnity and defense for claims asserted against a health care provider for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and *after December 31, 2005.* [Emphasis and footnote added.]

The obligation of the MCARE Fund under Section 715 and the previous obligation of the CAT Fund under Section 605 of the Malpractice Act to defend and fully indemnify health care providers for claims

against them is commonly referred to as "first-dollar indemnity." *Pa. Med. Soc'y Liab. Ins. Co. v. Med. Prof'l Liab. Catastrophe Loss Fund,* 577 Pa. 87, 90, 842 A.2d 379, 381 (2004). Notably, while Section 712 sets out both per occurrence and annual aggregate limits for excess claims, Section 715 sets out only a per occurrence limit for these "first dollar" or "extended" claims, which gives rise to the present dispute.

## II.

In June 2008, Tamara Blanchard, the parent and guardian of Kiana Townes, filed a medical malpractice action against Allegheny General on behalf of Townes in the Court of Common Pleas of Allegheny County. Blanchard alleged that Townes was born on March 29, 1998 at Allegheny General by an emergency C–section and that Townes experienced seizures at birth and was diagnosed with birth asphyxia and multi-organ dysfunction as a result of the negligent care of Allegheny General and its nursing staff on the day of her birth. In July 2008, Gateway Risk Services, Inc., which provides claims services for Allegheny General's professional liability insurance carrier, sent the MCARE Fund notice of a potential extended claim under Section 715 of the MCARE Act and asked the MCARE Fund to defend and indemnify Allegheny General for Townes' claim.

In a letter dated September 25, 2008, the MCARE Fund's chief counsel informed Allegheny General that the MCARE Fund had accepted Townes' action as an extended claim under Section 715 of the MCARE Act.[7] The chief coun-

Pa. 161, 964 A.2d 354 (2009). In addition, if an individual is an unemancipated minor at the time the cause of action accrued, the statute of limitations period is tolled until he or she attains eighteen years of age. Section

5533(b)(1) of the Judicial Code, *as amended,* 42 Pa.C.S. § 5533(b)(1).

7. The action was filed more than four years after March 29, 1998, the date of Townes' birth, when the incident giving rise to

sel further stated that the MCARE Fund was required to provide Allegheny General with a legal defense and indemnity coverage up to $1,000,000 for each occurrence, but that "any exhaustion of aggregate limits may affect available coverage." The trial court scheduled a jury trial on Townes' action for March 16, 2010. Before the case reached a jury verdict, the parties settled the action for $1,100,000 on March 26, 2010, which settlement was approved by the trial court.

Before the settlement, Allegheny General filed a petition for review in the nature of a declaratory judgment action against the MCARE Fund and Townes in this Court's original jurisdiction. Allegheny General sought a declaration that the MCARE Fund's $1,000,000 per occurrence liability limit under Section 715(b) of the MCARE Act is not subject to the MCARE Fund's annual aggregate liability limit. After the close of pleadings, Allegheny General filed an application for summary relief, and the MCARE Fund filed a cross-application for summary relief. The MCARE Fund alleged that the MCARE Fund's annual aggregate liability limit for 1998, when Townes' cause of action accrued, was $2,700,000 under Section 701(d)(1) of the Malpractice Act and that Allegheny General had eroded the MCARE Fund's 1998 annual aggregate liability limit and had only $394,917 available to cover Townes' extended claim. The MCARE Fund averred that it agreed to pay Blanchard $394,917 on December 30, 2010. This Court issued a briefing schedule and ordered the matter to be submitted for expedited consideration. Blanchard advised the Court that she would not file a brief and would not participate in oral argument.

Allegheny General argues that the MCARE Fund is required to pay Allegheny General $1,000,000 in first-dollar indemnity coverage under the plain and unambiguous language in Section 715(b) of the MCARE Act and that the MCARE Fund's annual aggregate liability limit in other provisions of the Malpractice Act and the MCARE Act does not apply to extended claims. Allegheny General maintains that the Legislature included the MCARE Fund's annual aggregate liability limit for excess claims but omitted such a limit for extended claims in Section 715(b) of the MCARE Act, in order to relieve primary insurance carriers from the effects of very long tails of potential liability due to the discovery rule and the tolling of the statute of limitations period for minors, and to provide stability and predictability in assessing accurate insurance rates. Allegheny General asserts that the MCARE Fund should have advised health care providers to purchase tail policies[8] to avoid

Townes' cause of action occurred. Because she was still a minor when the action was filed, the statute of limitations period had not begun to run at that time. In addition, the MCARE Fund received timely notice of the extended claim. Her claim, therefore, satisfied the prerequisites for an extended claim under Section 715(a) of the MCARE Act. We note that Section 513(c) of the MCARE Act, 40 P.S. § 1303.513(c), provides that "[n]o cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later." The statute of repose provision of Section 513 applies to causes of action that arise on or after its effective date, March 20, 2002. Section 5105(b) of the Act of March 20, 2002, P.L. 154.

8. A claims policy provides coverage for claims filed when the policy is in effect. *Paternaster v. Lee*, 581 Pa. 28, 863 A.2d 487 (2004). An occurrence policy covers claims related to acts that occurred while the policy is in effect, regardless of when the claims are filed. *Id.* A tail policy provides coverage for claims filed after a claims policy lapsed if the

potentially significant liability exposure resulting from the erosion of the annual aggregate limit.

The MCARE Fund counters that both excess claims and extended claims are subject to the MCARE Fund's annual aggregate liability limit when Section 715 and other provisions of the MCARE Act are construed together. The MCARE Fund states:

> [I]t makes sense that, under either excess coverage or Section 715 coverage, the health care provider's M[CARE] coverage is subject to an annual aggregate limit. Otherwise, participating health care providers would be treated differently under the [MCARE Act]. . . . For example, participating health care providers who have multiple . . . excess claims would be subject to an annual aggregate limit, while participating health care providers who have multiple Section 715 claims would not be subject to an annual aggregate limit and would have endless M[CARE] coverage. Certainly the legislature did not intend for such a disparity to exist . . . because that would be an absurd result.

MCARE Fund's Brief at 12. The MCARE Fund asserts that its interpretation has never been challenged for thirty-five years since the enactment of the Malpractice Act in 1975 and that, as an agency charged with the administration of the MCARE Act, its interpretation is entitled to substantial deference, citing *Rendell v. Pennsylvania State Ethics Commission,* 603 Pa. 292, 983 A.2d 708 (2009).[9]

### III.

■■ The role of the CAT Fund and the MCARE Fund as a primary insurance carrier for extended claims is "a particularized one" and "represent[s] a specialized statutory duty with express prerequisites attached by the Legislature in an arena that, perhaps by necessity in terms of the allocation of limited resources, has become highly technical." *Pa. Med. Soc'y Liab. Ins.,* 577 Pa. at 96–97, 842 A.2d at 384–85. The MCARE Fund's duty to defend and pay extended claims is "an exception to the Department's role as an excess provider." *Cope v. Ins. Comm'r of the Commonwealth,* 955 A.2d 1043, 1045 (Pa.Cmwlth. 2008). Notably, in creating this exception, the General Assembly has expressly created a disparity between the treatment of excess and extended claims. For this reason, we reject, without need for further discussion, the Fund's argument, quoted above, concerning disparate treatment. Moreover, we note our agreement with Allegheny General as to the likely reasons for the different statutory treatment of extended claims.

■ The applicability of the MCARE Fund's annual aggregate liability limit found in other provisions of the Malpractice Act and the MCARE Act to extended claims filed under Section 715 of the MCARE Act involves statutory construction. The object of statutory interpretation is to ascertain and effectuate legislative intent. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *Wheeling–Pittsburgh Steel Corp. v. Dep't of Envtl. Prot.,* 979

---

claims are related to acts that occurred while the claims policy was in effect. *Id.*

9. The Court may grant an application for summary relief at any time after the filing of a petition for review in an appellate or original jurisdiction matter and enter judgment "if the

right of the applicant thereto is clear." Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1532(b). In order to grant summary relief, there must be no disputed issues of material fact. *Jubelirer v. Rendell,* 598 Pa. 16, 953 A.2d 514 (2008).

A.2d 931 (Pa.Cmwlth.2009). The best indication of legislative intent is the plain language of the statute. *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 601 Pa. 449, 974 A.2d 1144 (2009). When the words of a statute are not explicit, however, the court must resort to statutory construction rules to ascertain legislative intent. 1 Pa.C.S. § 1921(c); *Penn Jersey Advance, Inc. v. Grim*, 599 Pa. 534, 962 A.2d 632 (2009).

 As noted by the MCARE Fund, it is well-established that all sections of a statute must be construed together in conjunction with each other and with reference to the entire statute. *Penn Jersey Advance.* In addition, provisions of a statute must be construed with reference to the context in which they appear. *Consulting Eng'rs Council of Pa. v. State Architects Licensure Bd.*, 522 Pa. 204, 560 A.2d 1375 (1989); *Keystone Coal Mining Corp. v. Workers' Comp. Appeal Bd. (Fink)*, 896 A.2d 691 (Pa.Cmwlth.2006). The object to be attained, former law, consequences of a particular interpretation and legislative history may also be considered to ascertain legislative intent. 1 Pa. C.S. § 1921(c)(4)-(7). An agency's interpretation is entitled to deference if it is not clearly erroneous. *Riverwalk Casino, L.P. v. Pa. Gaming Control Bd.*, 592 Pa. 505, 926 A.2d 926 (2007); *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 958 A.2d 1050 (Pa.Cmwlth.2008), *aff'd*, ―― Pa. ――, 8 A.3d 866 (2010).

In the former statutory scheme, Section 701(d) of the Malpractice Act provided that the CAT Fund was created "for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider ... to the extent such health care provider's share exceeds its basic coverage insurance in effect at the time of occurrence...." The same section then set forth the CAT Fund's per occurrence and annual aggregate liability limits for 1997 through 2001. Section 605 of that Act, like § 715 of the MCARE Act, provided first dollar indemnity for extended claims. However, Section 605 contained no reference to any limits of liability. Therefore, since it was clear that the General Assembly did not intend the fund's extended claims coverage liability to be entirely unlimited, the per occurrence and aggregate limits of Section 701 were constructively applied to Section 605 coverage as well.

The current statutory scheme under the MCARE Act, although similar, has one significant difference. Section 712 of the MCARE Act, like Section 701(d) of the Malpractice Act, which requires the MCARE Fund to "pay claims against participating health care providers for losses or damages awarded ... against them in excess of the basic insurance coverage," sets forth the MCARE Fund's per occurrence and annual aggregate liability limits for 2002 and subsequent coverage years. Nonetheless, Section 715, in providing indemnity and primary coverage for extended claims does, *unlike* its counterpart in the Malpractice Act, references a limit on the fund's liability. It imposes a per occurrence liability limit which, significantly, is different from the per occurrence limit for excess claims, although it is silent as to any annual aggregate liability limit.

 Thus, unlike in the Malpractice Act, there is no need to resort to Section 712 to find limits on liability for extended claims. Indeed, the fact that excess and extended claims provisions each have their own per occurrence limit which differs from the other makes abundantly clear that no borrowing of the limits from Section 712 was intended. As to the lack of an aggregate limit in Section 715, under the principle of *expressio unius est exclusio alterius*, the express mention of a spe-

cific matter in a statute implies the exclusion of others not mentioned. *Burris v. State Employes' Ret. Bd.*, 745 A.2d 704 (Pa.Cmwlth.2000). Where, as here, "the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded." *Cherry v. Pa. Higher Educ. Assistance Agency*, 153 Pa.Cmwlth. 210, 620 A.2d 687, 690–91 (1993), *aff'd*, 537 Pa. 186, 642 A.2d 463 (1994). When Section 701(d) of the Malpractice Act and Sections 712(a) and (c) and 715(b) of the MCARE Act are construed in conjunction with each other and in the context in which they appear, we must conclude that the MCARE Fund's annual aggregate liability limit is not intended to apply to extended claims.[10] As to the MCARE Fund's argument that its view that the aggregate limit applicable to excess claims should also apply to extended claims has gone unchallenged for 35 years, we note only that during the vast majority of those years the Malpractice Act, under which borrowing of limits was necessary, was in effect.

The MCARE Fund points to other provisions of the MCARE Act, which apply to both excess claims and extended claims: Section 712(j) ("[c]laims" must be paid by December 31 following the August 31 on which they became final); Section 713(d), 40 P.S. § 1303.713(d) (information maintained by the Insurance Department regarding "a claim" is confidential); and Section 714(d), (f) and (h), 40 P.S. § 1303.714(d), (f) and (h) (the Department has authority to defend, litigate, settle, compromise and adjust "a claim" or "claims" and is required to pay delay damages and post-judgment interest on "a claim"). Those provisions, however, expressly apply to "a claim" or "claims," which encompass all claims filed under the MCARE Act. Unlike those sections, Section 715(b) applies exclusively to extended claims defended by the Insurance Department. Because the MCARE Fund's interpretation is clearly erroneous, it is not entitled to deference. *Riverwalk Casino; Bayada.*[11]

## IV.

The MCARE Fund further argues that if we fail to adopt its interpretation, its payment and assessments on the participating health care providers would increase, and the gradual phasing out of the MCARE Fund intended by the Legislature would be delayed.

Such public policy concerns expressed by the MCARE Fund, however, cannot override application of the well-established statutory construction rules. As the Pennsylvania Supreme Court emphasized in *Weaver v. Harpster*, 601 Pa. 488, 502, 975 A.2d 555, 563 (2009):

It is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists "only when a given policy is so obviously for or against public health, safety, mor-

---

10. The legislative history also supports our conclusion. The Legislature enacted Section 605 of the Malpractice Act, requiring the CAT Fund to defend and pay extended claims, in order to afford insurance companies greater certainty in fixing reserves against claims delayed due to the discovery rule and the tolling of the statute of limitations period. Pa. Legis. J.—House 2333 (July 21, 1975); *Pa. Med. Soc'y Liab. Ins.* Application of the annual liability limit to extended claims would not serve such purposes.

11. The MCARE Fund's position is also inconsistent. The MCARE Fund fails to explain why it would apply only the $2,700,000 annual aggregate limit for the 1998 coverage period in Section 701(d)(1) of the Malpractice Act, not the lower $900,000 per occurrence limit in that section, to Townes' claim.

als, or welfare that there is a virtual unanimity of opinion in regard to it." [Quoting *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).]

In *Bender v. Pennsylvania Insurance Department,* 893 A.2d 161, 162 (Pa.Cmwlth. 2006), the Insurance Department and another party made a similar public policy argument based on "a parade of horribles," such as insurance rate increases, that would result if we failed to accept their respective positions. The Court rejected the argument, stating: "Despite the parties' public policy concerns, the Court's decision is based squarely on well-established principles of statutory interpretation.... The Court may not rewrite a statute because we think it unwise from a public policy perspective." *Id.* at 163–64.[12]

Accordingly, the Court grants Allegheny General's application for summary relief and denies the MCARE Fund's cross-application for summary relief. Allegheny General is entitled to an indemnity payment of up to $1,000,000 from the MCARE Fund for Townes' extended claim, without any reduction of amounts previously paid by the MCARE Fund to Allegheny General for the 1998 coverage year.

### ORDER

AND NOW, this 21st day of December 2010, the application of West Penn Allegheny Health System d/b/a Allegheny General Hospital (Allegheny General) for summary relief is GRANTED, and the cross-application of the Medical Care Availability and Reduction of Error Fund (MCARE Fund) for summary relief is DENIED. Judgment is entered in favor of Allegheny General and against the

MCARE Fund in the above-captioned action. Allegheny General is entitled to an indemnity payment of up to $1,000,000 from the MCARE Fund for Kiana Townes' extended claim filed under Section 715 of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.715, without any reduction of amounts previously paid by the MCARE Fund to Allegheny General for the 1998 coverage year.

12. We note that Section 715(d) of the MCARE Act requires all medical liability insurance policies issued on or after January 1, 2006 to provide defense and indemnity of extended claims for a breach of contract or tort that occurs after December 31, 2005. Contrary to the MCARE Fund's assertion, therefore, the conclusion we have reached today would not result in "endless" coverage of extended claims by the MCARE Fund.