IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam J. Long,                                :
                          Appellant          :
                                             :
           v.                                :
                                             :
City of Pittsburgh Zoning                    :
Board of Adjustment and Zhang                :    No. 89 C.D. 2023
Jiangyang                                    :    Submitted: February 4, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON                           FILED: April 23, 2025


           Adam J. Long (Appellant) appeals from the December 20, 2022 Order
(Trial Court Order) of the Court of Common Pleas of Allegheny County (Trial
Court) that affirmed the decision of the City of Pittsburgh (City) Zoning Board of
Adjustment (Board). The Board denied Appellant's appeal of a zoning application
to construct a new four-unit residential structure on the same lot with an existing
single-unit residential structure (Application). Upon review, we reverse the Trial
Court Order.

## I. Background and Procedural Posture

           Zhang Jiangyang (Intervenor) owns a property located at 6633
Northumberland Street in the City (Property). *See* Board Decision dated June 13,
2022 (Board Decision) at 2, Reproduced Record (R.R.) at 80a; *see also* Trial Court
Opinion dated December 20, 2022 (Trial Court Opinion) at 1, R.R. at 135a. The
Property, which totals 9,600 square feet in a single parcel, is a "double lot" consisting
of two combined 4,800-square-foot parcels originally laid out in a 1908 recorded

subdivision plan. *See* Board Decision at 2, R.R. at 80a; *see also* Trial Court Opinion at 1, R.R. at 135a. There is no dispute that the property is being treated as a single lot for purposes of the Application. *See* R.R. at 119a-20a (statement by Appellant that "[t]he two recorded lots have been designated as one zoning lot for purposes of this development") & 130a-31a (statement by Intervenor's counsel that the two lots "have been held in single ownership as a combined two lots . . . and they are being treated correctly as a single zoning lot"[1]).

The Property is in the City's Residential Multi-Family Medium Density Zoning District (RM-M District), which permits by right both Single-Unit Detached and Multi-Unit Residential uses. *See* Board Decision at 2, R.R. at 80a; *see also* Trial Court Opinion at 1-2, R.R. at 135a-36a. Currently, the Property's only primary structure is a two-story house. *See* Board Decision at 2, R.R. at 80a; *see also* Trial Court Opinion at 1, R.R. at 135a.

In June 2020, Intervenor filed the Application seeking approval to construct a new four-unit residential structure on the Property as part of a Unit Group Development, with the existing single-unit structure to remain on the Property as a fifth residential unit. *See* Board Decision at 2, R.R. at 80a; *see also* Trial Court Opinion at 1, R.R. at 135a. In January 2022, the City's Department of Planning (Department) approved the Application and issued a Record of Zoning Approval. *See* Board Decision at 2, R.R. at 80a; *see also* Trial Court Opinion at 2, R.R. at 136a.

Appellant timely appealed to the Board. *See* Board Decision at 2, R.R. at 80a; *see also* Trial Court Opinion at 2, R.R. at 136a. The Board conducted a

---

[1] The Zoning Code of the City of Pittsburgh (Zoning Code) defines a "zoning lot" as "a parcel of land that is designated by its owner at the time of applying for a building permit as one (1) lot, all of which is to be used, developed or built upon as a unit under single ownership." Zoning Code § 926.134.

hearing on the appeal in April 2022, after which it denied the appeal and affirmed the Department's approval of the Application. *See* Board Decision at 2 & 5, R.R. at 80a & 83a; *see also* Trial Court Opinion at 2, R.R. at 136a.

Appellant appealed the Board Decision to the Trial Court. *See* Trial Court Opinion at 2, R.R. at 136a. Following oral argument, the Trial Court affirmed the Board Decision and denied and dismissed Appellant's appeal by order dated December 20, 2022. *See* Trial Court Opinion at 4, R.R. at 138a. Appellant then appealed to this Court.

## II. Issues

Appellant raises several issues on appeal.[2] First, Appellant claims the Board erred by finding that the Zoning Code of the City of Pittsburgh[3] (Zoning Code) permits Unit Group Development in the RM-M District. Second, Appellant argues that the Board abused its discretion by determining that Intervenor's proposed development amounted to two or more "related" primary buildings as required for compliance with the Zoning Code. Appellant's Br. at 4 & 11-13. Third, Appellant claims that the Board erred by ignoring the phrase "within a single building" in relation to the term "multi-unit residential" as used in the Zoning Code. Appellant's Br. at 4 & 13-16. Intervenor counters that a Unit Group Development is permitted in the RM-M District. Further, Intervenor contends that, to the extent that Appellant argued in his brief that the proposed development does not qualify as a Unit Group Development because the buildings are different styles, that argument is waived

_____

[2] Where the trial court has taken no additional evidence, this Court's review is limited to determining whether a zoning board's findings are supported by substantial evidence or whether the zoning board made an error of law in rendering its decision. *Twp. of Exeter v. Zoning Hearing Bd.*, 962 A.2d 653, 659 (Pa. 2009).

[3] Pittsburgh, Pa., Zoning Code (1999), *as amended*.

3

because it was not raised previously. Intervenor also maintains that the Board properly considered all relevant provisions of the Zoning Code in rendering its decision.

## III. Discussion

Appellant's claims present questions of statutory interpretation. When interpreting the meaning of a zoning ordinance, we apply the principles of statutory construction with the primary objective of determining the intent of the legislative body that enacted the ordinance. *See THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014); *see also* 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). As this Court has observed:

> [A] statute's plain language generally provides the best indication of legislative intent. *See Com. v. McClintic*, 909 A.2d 1241 (Pa. 2006). Thus, statutory construction begins with examination of the text itself. *Se. Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa.C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says[,] one must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). We may not insert a word the legislature failed to supply into a statute.
>
> "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

*Interstate Gas Supply, Inc. v. Pub. Util. Comm'n*, 298 A.3d 1181, 1187-88 (Pa. Cmwlth. 2023) (emphasis and brackets omitted). Moreover, a statute – or ordinance – is not ambiguous "merely because two conflicting interpretations may be suggested." *Id.* at 1188 (quoting *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014) (additional quotation marks omitted)).

Further, Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC)[4] provides:

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. § 10603.1. Section 614 of the MPC provides that, generally, a "zoning officer shall administer the zoning ordinance in accordance with its literal terms[.]" 53 P.S. § 10614. Additionally, "[w]here [a] statute or ordinance defines a word or phrase therein the court is bound thereby." *Hughes v. Sch. Dist. of Pittsburgh*, 108 A.2d 698, 699 (Pa. 1954) (emphasis omitted). As our Supreme Court has explained:

> A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of the intendments of the legislation although such definitions may be different from ordinary usage; it may create its own dictionary to be applied to the particular law or ordinance in question.

*Id.* at 699 (quoting *Sterling v. City of Phila.*, 106 A.2d 793, 795 (Pa. 1954)).

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

Here, the Zoning Code defines a "Lot" as "land occupied or intended to be ***occupied by no more than one (1) main structure, or unit group of buildings***, and accessory buildings, together with such setbacks and lot area as are required by this [Zoning] Code, and having at least one (1) frontage upon a street." Zoning Code § 926.129, R.R. at 197a (emphasis added). "Development" is defined as:

> the performance of any building, excavation, or mining operation, the making of any substantial change in the use or appearance of any structures or land, or the creation or termination of rights of access or riparian rights . . . .
>
> Development means any activity for which a permit or other approval is required to be obtained from the Zoning Administrator.

Zoning Code § 926.67. "Unit Group Development" is "two (2) or more related primary buildings or uses on one (1) zoning lot." Zoning Code § 926.241, R.R. at 209a. Thus, where Unit Group Development is permitted, the Zoning Code allows more than one related primary structure to be placed on a zoning lot.

The Zoning Code permits both Single-Unit Detached Residential[5] and Multi-Unit Residential uses in the RM-M District. Zoning Code Use Table, § 911.02, R.R. at 143a-44a. The Zoning Code Use Table defines "Single-Unit

---

[5] The Zoning Code defines "residential" as "a structure or use type that is arranged, designed, used or intended to be used for one (1) or more dwelling units for residential occupancy." Zoning Code § 926.200, R.R. at 203a. In turn, the Zoning Code defines a "dwelling unit" as:

> [A] building or portion thereof designed and used for residential occupancy by a single family and that includes exclusive sleeping, cooking, eating and sanitation facilities. Buildings with more than one (1) set of cooking facilities are considered to contain multiple dwelling units unless the additional cooking facilities are clearly accessory, such as an outdoor grill.

Zoning Code § 926.72, R.R. at 191a.

Detached Residential" as "the use of a zoning lot for *one* detached housing unit." Zoning Code Use Table, § 911.02, R.R. at 143a (emphasis added). The Zoning Code defines "Multi-Unit Residential" as "the use of a zoning lot for four or more dwelling units that are contained *within a single building*." Zoning Code Use Table, § 911.02, R.R. at 144a (emphasis added). There is no provision in the Use Table or within the RM-M District provisions of the Zoning Code that permits Unit Group Development.

Nonetheless, purportedly based on these definitions, the Board determined that, because Single-Unit Residential and Multi-Unit Residential are both uses permitted within the RM-M District, a Unit Group Development consisting of one structure to be used as a Single-Unit Residential use and one structure to be used as a Multi-Unit Residential use is permitted on the single zoning lot that makes up the Property. *See* Board Decision at 4, R.R. at 82a. The Board found that Unit Group Development is a form of development as opposed to a type of use. *See* Board Decision at 4, R.R. at 82a. The Board further found that the condominium form of government contemplated for the separate residential units (the four units in the Multi-Unit Residential structure and the one additional unit represented by the single-family home as a Single-Unit Residential structure) did not constitute a subdivision of the Property. *See* Board Decision at 5, R.R. at 83a. Accordingly, the Board denied Appellant's appeal.

On review, the Trial Court affirmed the Board's decision, denying and dismissing Appellant's appeal. *See* Trial Court Opinion at 1-4, R.R. at 135a-38a. Like the Board, the Trial Court noted that the Zoning Code allows both Single-Unit Residential and Multi-Unit Residential uses by right in the RM-M District. *See* Trial Court Opinion at 1-2, R.R. at 135a-36a. Citing the definition section of the Zoning

7

Code, the Trial Court stated that "[t]he [Zoning] Code allows for a type of development known as a Unit Group Development which consists of two or more related primary buildings or uses on one zoning lot." Trial Court Opinion at 2, R.R. at 136a. The Trial Court found the Board properly determined that the Zoning Code permits the Unit Group Development proposed in the Application as follows:

> Under the [Zoning] Code's definition and Use Table, "[U]nit [G]roup [D]evelopment" is a form of development and not a type of use. Both [S]ingle-[U]nit [Residential] and [M]ulti-[U]nit [R]esidential are permitted uses in the RM-M [] [D]istrict. The [Zoning] Code defines "Lot, Zoning" as a parcel of land that is "designated by its owner at the time of applying for a building permit as one lot, all of which is to be used, developed or built upon as a unit under single ownership[.]" The [Zoning C]ode states that such lot may consist of a single recorded lot, a portion of a recorded lot or a combination of recorded lots, and/or portions of recorded lots. *See* [§] 926.134. Therefore, consistent with that definition, the [] Property is comprised of two recorded lots from a 1908 recorded plan. ***Nothing in the [Zoning] Code precludes development of the single zoning lot for a [U]nit [G]roup [D]evelopment which would include two structures***, one for a permitted [S]ingle-[U]nit [Residential] use/structure and one for a permitted [M]ulti-[U]nit [Residential] use/structure. Because both structures within the proposed [U]nit-[G]roup [D]evelopment comply with the [Zoning] Code's site development standards for [a] RM-M [] [D]istrict, the Board properly affirmed the Zoning Administrator's approval.

Trial Court Opinion at 3, R.R. at 137a (emphasis added).

Applying the Zoning Code definitions, we agree with Intervenor and the Board that Unit Group Development is not a use, but a type of development. Nevertheless, we do not agree with the Trial Court's analysis of the Zoning Code, which Appellant challenges and Intervenor relies upon to argue that the Zoning Code

8

permits Unit Group Development in the RM-M District. *See* Appellant's Br. at 9-16; Intervenor's Br. at 7-12.

"[W]e acknowledge that a zoning board's interpretation of its own zoning ordinance is entitled to great deference and weight," and "[w]e also recognize that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land." *In re Chestnut Hill Cmty. Ass'n*, 155 A.3d 658, 667 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted). We further observe, however, that

> a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. Zoning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law. Thus, [a zoning hearing board] is required to apply the terms of [a z]oning [o]rdinance as written rather than deviating from those terms based on an unexpressed policy.

*Chestnut Hill*, 155 A.3d at 667-68 (quoting *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007)) (original emphasis and brackets omitted; internal quotation marks omitted). Accordingly, a zoning board is bound by the language actually contained in a zoning ordinance and may not insert terms not present. *See Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012) ("When examining a statute, we are bound by its plain language; accordingly, we should not insert words into the [statute] that are plainly not there."); *Interstate Gas*, 298 A.3d at 1188.

Here, Zoning Code Chapter 903 outlines the specifications and requirements of residential districts within the City. *See* Zoning Code § 903.01-03.

Specifically, Section 903.02(E)[6] sets forth the RM-M District's permitted uses by referring to the Use Table provided in Section 911.02 of the Zoning Code. *See* Zoning Code § 903.02(E). The Use Table for Section 911.02, in turn, allows both Single-Unit Detached Residential and Multi-Unit Residential uses, as defined above, in the RM-M District. *See* Zoning Code § 911.02. Each of these uses, however, contemplates that ***only one*** main structure will be constructed on a given zoning lot. *See* Zoning Code Use Table, § 911.02 (defining "Single-Unit Detached Residential" as "the use of a zoning lot for ***one detached housing unit***" and "Multi-Unit Residential" as "the use of a zoning lot for four or more dwelling units ***that are contained within a single building***") (emphasis provided), R.R. at 143a-44a. Notably, neither the Use Table provided in Section 911.02 nor the use regulations provided in Section 903.02(E) expressly permit Unit Group Development in the RM-M District. *See* Zoning Code §§ 903.02(E) & 911.02. In fact, the Zoning Code does not expressly permit Unit Group Development in ***any*** of the City's residential districts. *See* Zoning Code § 903. Rather, the Zoning Code expressly permits Unit Group Development ***only*** in the City's downtown Golden Triangle Zoning District,

---

[6] Section 903.02(E) provides, in pertinent part:

RM, Multi-Unit Residential.

1. Use Regulations.
     (a) Primary Uses. Primary uses shall be allowed in the RM Subdistrict in accordance with the Use Table of Section 911.02.

     (b) Accessory Uses. Accessory uses shall be allowed in the RM Subdistrict in accordance with the Accessory Use regulations of Chapter 912.

Zoning Code § 911.02(E).

under the general limitations portion of the use regulations.[7]  *See* Zoning Code § 910.01(C)(1)(b)(4) (providing expressly that "[u]nit group development shall be permitted").  This provision is found under the general provisions section of the Golden Triangle Zoning District section of the Zoning Code and its applicability to all five Golden Triangle Zoning Districts is indicated.

This Court has recognized that, "[w]here the legislature includes specific language in one section of a statute[8] and excludes it from another, it should not be implied where excluded."  *House 2 Home, LLC v. Zoning Hearing Bd. of N. Coventry Twp.*, 308 A.3d 391, 398 (Pa. Cmwlth. 2024) (quoting *W. Penn Allegheny Health Sys. v. Med. Care Availability & Reduction of Error Fund*, 11 A.3d 598, 606 (Pa. Cmwlth. 2010)) (internal quotation marks omitted); *see also Interstate Gas*, 298 A.3d at 1188.  Here, the legislative body that enacted the Zoning Code could have included and permitted Unit Group Development in the RM-M District but did not do so, deliberately choosing instead to allow Unit Group Development **only** in the Golden Triangle Zoning District.  The Board erred by reading this excluded term into the separate part of the Zoning Code relating to the RM-M District.

Further, the Board's reading of the Zoning Code as permitting Unit Group Development in the RM-M District, where it is not expressly specified,

---

[7] The purpose of the Golden Triangle Zoning District is to "1) Maintain and enhance the Golden Triangle as the economic and symbolic core of the region; (2) Support and develop commercial, office and cultural uses; and 3) Develop an attractive, pedestrian-oriented physical environment with a design quality that recognizes the Golden Triangle's regional significance." Zoning Code § 910.01(A).

[8] As discussed above, courts apply the rules of statutory construction in analyzing zoning provisions.  "The rules of statutory construction are applied to zoning ordinances with equal force and effect." *House 2 Home, LLC v. Zoning Hearing Bd. of N. Coventry Twp.*, 308 A.3d 391, 398 (Pa. Cmwlth. 2024) (quoting *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 507 (Pa. 2021)) (additional quotation marks and internal brackets omitted).

11

renders superfluous the express language of Section 910.01(c)(1)(b)(4) of the Zoning Code permitting Unit Group Development in the Golden Triangle Zoning District. Such a reading contravenes the rules of statutory interpretation. *See Frazier*, 52 A.3d at 245 (explaining that "this Court should construe statutes to give effect to all of their provisions, and should not ignore language nor render any portion of the statute superfluous"). For this additional reason, the Board erred by determining that the Zoning Code permits Unit Group Development in the RM-M District.

Intervenor points out that the Zoning Code's definition of "lot" includes "a unit group of buildings" upon a single lot. Intervenor's Br. at 9-12. This does not affect our conclusion that a Unit Group Development is not permitted in the RM-M District. The mention of a "unit group of buildings" in the definition of "lot" does not provide permission to build multiple buildings on a single lot as a Unit Group Development; it merely indicates that permitted buildings on a lot could include one main structure and accessory buildings where permitted *or* a unit group of buildings and accessory buildings *where permitted*. Critically, however, *the Unit Group Development proposed here is not permitted in the RM-M District*, as explained above.

In summary, because Unit Group Development is not authorized in the RM-M District, the project contemplated in the Application is not permitted under the definitions of the Zoning Code. The five-unit residential condominium project contemplated by the Application qualifies as neither a Single-Unit Detached Residential use, which relates to a single detached housing unit, nor a Multi-Unit Residential use, which permits four or more dwelling units within a single building. *See* Zoning Code § 911.02. The use requested in the Application is a combination

12

of these two uses, and such a combination of buildings/uses is not allowed in the absence of a Unit Group Development, ***which is not permitted*** by the Zoning Code in the RM-M District.

Intervenor posits that Appellant waived an argument that the proposed construction does not qualify as Unit Group Development. Intervenor points to Appellant's argument that the single house and the multi-unit building are not "related primary buildings" because the proposed construction is "a modern, four-story condominium" while the existing building is "a century old single-family dwelling." Appellant's Br. at 8. Intervenor asserts that Appellant waived this argument by raising it for the first time in his brief to this Court. Intervenor further contends that even if not waived, Appellant's argument is unavailing because aesthetics are not a proper consideration in zoning matters. However, because we have concluded, ***on a different basis***, that the proposed Unit Group Development is not allowed by the Zoning Code, we do not reach Intervenor's waiver and aesthetics arguments.

Similarly, because we reverse based on our conclusion that Unit Group Development is not permitted on the Property, we also do not reach Appellant's additional arguments that the Board abused its discretion by determining that Intervenor's proposed development amounted to two or more "related" primary buildings on a single zoning lot in compliance with the Zoning Code and that the Board erred by ignoring the phrase "within a single building" in relation to the term "multi-unit residential" as used in the Zoning Code. Appellant's Br. at 4 & 11-16.

## IV. Conclusion

For the foregoing reasons, we reverse the Trial Court Order.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam J. Long,                          :
                          Appellant    :
                                       :
          v.                           :
                                       :
City of Pittsburgh Zoning              :
Board of Adjustment and Zhang          :     No. 89 C.D. 2023
Jiangyang                              :

# **O R D E R**

AND NOW, this 23rd day of April, 2025, the December 20, 2022 Order of the Court of Common Pleas of Allegheny County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge