Renee BENDER, D.O. and Scott Epstein, D.O., Petitioners

v.

PENNSYLVANIA INSURANCE DE-PARTMENT, Medical Care Available and Reduction of Error Fund, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2005.

Decided Feb. 15, 2006.

Christopher A. Lewis, Philadelphia, for petitioners.

Zella Smith Anderson, Dept. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

This case involves a petition for review from an order of the Insurance Department (Department) denying first dollar indemnity and cost of defense to Drs. Renee Bender, D.O. and Scott Epstein, D.O. (Doctors) under the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.101 *et seq.*[1] The Insurance Commissioner affirmed and we would affirm the Insurance Commissioner.

1. Act of March 20, 2002, P.L. 154, *as amend-* *ed.*

The facts are undisputed. The Doctors were at all relevant times licensed to practice osteopathic medicine in Pennsylvania and were participating providers under what was formerly known as the CAT Fund and its successor the MCARE Fund.

On January 6, 1998, a medical malpractice claim against Parkview Hospital (Parkview), the attending physician, and Vanguard OB/GYN Associates, P.C., was filed by Rosalyn Rios (Rios). The claim alleged negligence in the treatment and care of Rios regarding the birth of her child, who was dead at the time of delivery on January 16, 1996. Prior to the birth, Rios had been seen and treated by the Doctors in the present case. Four years after the death of the child, Rios sought to amend the complaint to include the Doctors. The motion was denied because the statute of limitations period had expired. Rios was successful in the medical malpractice action and received a verdict of $650,000.00.

The balance of the verdict was divided among the three named defendants and their insurers. Parkview's insurance paid its primary limit of $300,000.00 plus $33,333.55 in delay damages and post-judgment interest. The MCARE Fund paid $155,000.00 plus $17,222.00 in delay damages and post-judgment interest. The remaining $144,445.00 was paid by Vanguard's insurer.

On October 6, 2003, Parkview filed a complaint seeking $333,333.55 in indemnification from the Doctors. The Doctors' respective primary insurers forwarded the complaint to the MCARE Fund and requested coverage for the Doctors. The MCARE Fund denied the request on January 26, 2004, stating that coverage is for malpractice actions, but not for indemnification actions.

■ The sole issue before this Court is whether the language of the MCARE statute entitles the Doctors to first dollar indemnity and cost of defense coverage in an indemnification action that is separate from the underlying malpractice action, to which the doctors were not a party. On issues of statutory interpretation this Court's scope of review is plenary, and our standard of review is *de novo*. *Medical Shoppe, Ltd. v. Wayne Memorial Hospital*, 866 A.2d 455 (Pa.Cmwlth.2005). We affirm the determination of the Insurance Commissioner.

Section 715(a) of the MCARE Act states in pertinent part:

> If a medical professional liability claim against a health care provider who was required to participate in the [MCARE Fund], is made more than four years after the breach of the contract or tort occurred and if the claim is filed within the applicable statute of limitations, the claim shall be defended by the department if the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. 40 P.S. § 1303.715(a).

Both parties assert that the language of the statute is unambiguous. Nevertheless, the parties reach differing conclusions about what that language means. On the one hand, the Doctors argue that the statute does not preclude indemnification actions related to professional liability claims against healthcare providers. On the other hand, the Insurance Department argues that the "medical professional liability claim" language is essential to determining precisely the kind of claim that is covered, namely, malpractice actions alone. Additionally, both parties summon a parade of horribles to dissuade the Court from adopting the other's interpretation. The Doctors claim that if they are denied cov-

erage, then all primarily liable doctors will also be denied coverage and that affordable health care will flee the Commonwealth. The Insurance Department counters that if the Doctors are covered, then rates will sky rocket due to the huge number of similar cases the Fund would have to cover.

Despite the parties' public policy concerns, the Court's decision is based squarely on well-established principles of statutory interpretation. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). The Court agrees with the parties that the language of the statute is unambiguous. We also agree with the Insurance Department that our decision turns on interpreting the phrase, "medical professional liability claim." Fortunately, the MCARE Act provides a definition for the phrase: " 'Medical professional liability claim.' Any claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." Section 103, 40 P.S. § 1303.103. Both the definition and the context of "medical professional liability claim" in section 715(a) most plainly indicate medical malpractice actions.

The Doctors argue that the phrases, "arising out of" and "breach of contract," in the definition militate in favor of their broader interpretation. (Brief for Petitioners, p. 12.) However, we are unable to identify any tort or breach of contract between the Doctors and Parkview arising from the furnishing of health care services. What we do see is an indemnification claim between two health care providers. That

this indemnification claim, which is tangentially related to the Rios malpractice action, does not confer MCARE Fund coverage on the Doctors automatically. To be sure, a tort did arise from health care services provided, but those services were provided to Rios by health care providers including Parkview and the Doctors. That tort was litigated in the malpractice action by Rios against Parkview and the other defendants and was properly covered by the MCARE Act. The malpractice action is distinct from the current indemnification action because the harm suffered was fundamentally different in nature, the harm was suffered by Rios, not Parkview, and the Doctors were simply not defendants in the malpractice action.

The Court notes, as do the Doctors, that the same elements of negligence that were proven in the malpractice action must again be proven in the indemnification action. However, unlike the Doctors, we see this as further evidence that the proceedings are separate in nature. If the indemnification and malpractice actions were truly part of the same "medical professional liability claim," then the finding of negligence ought to control for both. And yet, neither collateral estoppel nor res judicata could properly apply here. To the extent that the Doctors are able to reasonably argue that they ought to be covered by the MCARE Fund, it is only by reference to the Rios malpractice action. Yet, as we have stated already, the malpractice action was separate and distinct from this action and was, in fact, covered by the MCARE Fund. This is a clear case of indemnification, not one of subrogation. Therefore, we conclude that to interpret the statute as the Doctors wish would be to strain the plain meaning of "medical professional liability claim."

It is because different parties are involved and a different harm is complained of that we must conclude that the indemni-

fication action is distinct from the malpractice action. To do otherwise would be tantamount to the Court writing indemnification actions into the statute wherever they are related to malpractice judgments. Nevertheless, we lament that the Doctors are not covered here, despite the fact that they would have been covered if included in the malpractice action. It is through no fault of the Doctors that they find themselves outside the coverage of the MCARE Act. In reaching this conclusion, we are mindful of our duties when interpreting the law. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

██ The MCARE Act, in the opinion of this Court, is inadequate legislation because it requires us to reach the present result. However, such matters are for the legislature to address. The Court may not rewrite a statute because we think it unwise from a public policy perspective. The legislature neither provided coverage for indemnification actions through the MCARE Fund, nor did it anywhere express an intention to do so.[2]

Accordingly, the order of the Insurance Commissioner is affirmed.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 15th day of February 2006, the order of the Commissioner of the Commonwealth of Pennsylvania Department of Insurance is AFFIRMED.

---

**2.** For an excellent overview of the history and purposes of the predecessor to the MCARE Act, the CAT Fund, see Justice Newman's opinion in *Milton S. Hershey Medical Center* *of the Pennsylvania State University v. Medical Professional Liability Catastrophe Loss Fund,* 573 Pa. 74, 821 A.2d 1205 (2003).