IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Applied Medico-Legal Solutions Risk Retention Group, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| ProAssurance Specialty Insurance Company, Inc. and the Medical Care Availability and Reduction of Error Fund, | : | No. 193 M.D. 2025 |
| Respondents | : | Submitted: May 12, 2026 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                                     FILED: June 26, 2026


This action in our original jurisdiction is an insurance coverage dispute among the Petitioner, Applied Medico-Legal Solutions Risk Retention Group, Inc. (AMS), and the Respondents, ProAssurance Specialty Insurance Company, Inc. (ProAssurance) and the Medical Care Availability and Reduction of Error Fund (Mcare) regarding the payment of settlement funds in an underlying medical malpractice action against Daniel Nam, M.D. (Dr. Nam) and Advanced Inpatient Medicine Associates, LLC d/b/a Adfinitas Health at Wilkes-Barre (Adfinitas). Presently before the Court are the preliminary objections of ProAssurance and Mcare to AMS's second amended petition for review (Petition). We sustain ProAssurance's preliminary objection to paragraphs 10(7), 78(5), and 81 and to

demand for relief 5 in Count II and otherwise overrule the preliminary objections of ProAssurance. We overrule Mcare's preliminary objections.

## I. Background

The Petition pleads the following facts, which we take as true for purposes of disposing of the preliminary objections. This case arises from the settlement of an underlying medical malpractice action, *Cadden v. Nam* (C.P., No. 2021-05726) (Malpractice Action) filed in the Luzerne County Court of Common Pleas. Pet. at 1. In the Malpractice Action, the plaintiff, Joann Cadden (Cadden), sued Adfinitas, a health care management practice, and its employed physician, Dr. Nam, alleging negligence by Dr. Nam in medical care he provided to Cadden in December of 2019. *Id.*

AMS is a risk-retention group providing primary medical malpractice insurance to its members. Pet. at 5. ProAssurance is a primary medical malpractice insurer that insures physicians in Pennsylvania. *Id.* at 6. The Petition alleges that Mcare "is a special fund within Pennsylvania's State Treasury that was established to safeguard reasonable compensation for victims of medical negligence." *Id.* (citing https://www.insurance.pa.gov/SpecialFunds/MCARE/Pages/default.aspx) (last visited June 25, 2026). Mcare "is a unit of the Commonwealth of Pennsylvania, created by Section 712 of the Medical Care Availability and Reduction of Error Act (Mcare Act),[1] 40 P.S. §1303.712." *Id.*

Mcare collects and retains assessments from physicians and other health care providers. Pet. at 6. Mcare uses those funds to pay claims against participating healthcare providers and eligible entities for medical malpractice losses

---

[1] Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101-1303.910.

or damages that are in excess of basic insurance coverage provided by primary professional liability insurance companies or self-insurers. *Id.* In order to practice medicine in Pennsylvania, a physician must maintain the required coverage amount of basic primary professional liability insurance or have an approved self-insurance plan. *Id.* A physician must also pay the required assessments to Mcare. *Id.*; *see also* Sections 711 and 712 of the Mcare Act, 40 P.S. §§ 1303.711 & 1303.712; 49 Pa. Code § 16.32. Mcare notifies primary insurers annually of the assessment amounts owed by the insured physicians; the physicians pay the Mcare assessments directly to their primary insurers, who then remit the funds to Mcare. Pet. at 7-8.

From December 1, 2017 to December 30, 2020, Dr. Nam worked for Adfinitas as an employee on an as-needed basis. Pet. at 8. AMS provided primary insurance coverage to Adfinitas for a policy period of March 1, 2021 to March 1, 2022 "with a retroactive date of January 1, 2007.[]" *Id.* ProAssurance provided insurance to Adfinitas for three periods from January 1, 2018 to January 1, 2019, from January 1, 2019 to January 1, 2020, and from January 1, 2020 to March 1, 2020. *Id.* The period of Dr. Nam's alleged negligent treatment of Cadden is December 24 to December 29, 2019. *Id.* at 9.

According to AMS, ProAssurance was responsible to collect the Mcare assessment for each physician employed by Adfinitas, including Dr. Nam; to notify Mcare that each physician had the required basic primary professional liability insurance; and to remit the collected Mcare assessments to Mcare. Pet. at 8-9 (citing 31 Pa. Code § 242.6). Although Adfinitas purchased the requisite insurance coverage and remitted the required assessments to ProAssurance, ProAssurance failed to provide the requisite notice and assessment payments to Mcare on behalf of Adfinitas. *Id.* at 9. Although Dr. Nam was continuously employed and insured

by Adfinitas, his work on an as-needed basis led a former Adfinitas employee to inform ProAssurance incorrectly that there was a "gap" in Dr. Nam's employment for a period where no as-needed work was offered. *Id.* at 10. However, Adfinitas corrected its error and directed ProAssurance to add Dr. Nam back to its list of covered employee physicians almost three months before the events that led to the Malpractice Action. *Id.* Despite Adfinitas's directive, ProAssurance failed to add Dr. Nam back to the Adfinitas policy as a covered employee and to remit a timely assessment payment for Dr. Nam to Mcare. *Id.* at 11. ProAssurance later corrected its error and sent payment to Mcare for the period relevant to the Malpractice Action. *Id.* at 11-12.

ProAssurance's conduct led Mcare to conclude erroneously that Dr. Nam was not insured with the required basic primary malpractice insurance and that the required Mcare assessment had not been paid for Dr. Nam. Pet. at 9. As a result, when a settlement was reached with Cadden in the Malpractice Action, Mcare refused to contribute $500,000 that AMS alleges Mcare owed toward the settlement of the Malpractice Action. *Id.* AMS then paid the $500,000 that Mcare refused to pay toward the settlement. *Id.* at 12.

AMS filed its Petition against ProAssurance and Mcare, seeking recovery of the $500,000 AMS asserts should have been paid by one or both of them toward the settlement of the Cadden claim. The Petition contains six counts as follows.

Count I is a declaratory judgment claim against Mcare. AMS alleges that Mcare funds in the amount of $500,000 are due and owing toward the settlement of the Cadden claim because Dr. Nam was insured through ProAssurance and had paid his Mcare assessment prior to the relevant dates of alleged malpractice for the

4

Cadden claim. Thus, AMS asserts that Mcare should have contributed $500,000 towards settlement of the Cadden claim.

Count II is a declaratory judgment claim against ProAssurance. AMS alleges that ProAssurance breached its Insurance Policies with Adfinitas and its duties to Adfinitas and Dr. Nam under Pennsylvania law by: (1) failing to properly add Dr. Nam back to the Adfinitas policy as of October 1, 2019; (2) failing to properly inform Mcare that Dr. Nam had been placed back on the ProAssurance policy as of October 1, 2019; (3) failing to properly inform Mcare that Dr. Nam's Mcare Assessment had been paid to ProAssurance; and (4) failing to correct the matter with Mcare when it learned of these errors. This led Mcare to conclude erroneously that Dr. Nam was not insured through ProAssurance, and that he had not paid his assessment prior to the relevant dates of alleged malpractice for the Cadden claim, and thus caused Mcare to refuse to contribute its $500,000 towards settlement of the Cadden claim.

Count III is a claim for indemnity against both Mcare and ProAssurance. AMS demands indemnification of the $500,000 that AMS paid towards the settlement of the Malpractice Action, which debt AMS alleges was and is owed by Mcare and/or ProAssurance.

Count IV is a claim of unjust enrichment against Mcare. AMS alleges that because Mcare failed to properly contribute $500,000 in Mcare funds to the settlement of the Cadden claim, AMS was forced to contribute an additional $500,000 towards the Cadden settlement. AMS asserts that Mcare received a benefit thereby and was unjustly enriched.

Count V is a breach of contract claim against ProAssurance. AMS alleges that ProAssurance, in violation of its contractual and legal duties and in

5

violation of its duties under Subsections (d) and (e) of Section 242.6 of the relevant insurance regulation, 31 Pa. Code § 242.6(d) & (e),[2] breached its duties to Adfinitas by: (1) failing to properly add Dr. Nam back to the Adfinitas policy as of October 1, 2019; (2) failing to properly convey to the Mcare Fund that Dr. Nam had been placed back on the ProAssurance policy as of October 1, 2019; (3) failing to properly convey to Mcare that Dr. Nam's Mcare Assessment had been paid to ProAssurance; and (4) failing to correct those failures with the Mcare Fund when it learned of those errors. This led the Mcare Fund to conclude erroneously that Dr. Nam was not insured through ProAssurance and had not paid his assessment prior to the relevant dates of alleged malpractice for the Cadden claim. Consequently, the Mcare Fund refused to contribute its $500,000 towards settlement.

---

[2] Subsections (d) and (e) of the relevant insurance regulation provide:

> (e) Notwithstanding subsection (a), in the event that a health care provider is notified by the Fund of its noncompliance with the act's insurance requirements and insurance is purchased under the notice, the health care provider shall disclose this fact to the insurer; and the insurer shall submit the reporting form and remit the surcharge within 30 days of the effective date of the policy.

> (f) The emergency surcharge shall be reported to the Fund by the insurer or self insurer utilizing the same forms used when reporting the annual surcharge to the Fund. The forms used when reporting the emergency surcharge shall clearly indicate that it is the emergency surcharge being reported.

31 Pa. Code § 242.6(d) & (e).

Count VI is a claim of bad faith against ProAssurance pursuant to 42 Pa.C.S. § 8371,[3] governing actions on insurance policies. AMS alleges that ProAssurance's failure to carry out its duties and responsibilities toward Adfinitas and its employed physician, Dr. Nam, as described above, was in reckless disregard of the rights of Adfinitas and its employed physician, Dr. Nam, without reasonable basis, and constituted bad faith under 42 Pa.C.S. §8371 and the common law. AMS, as assignee of Adfinitas, avers that it is entitled to the special damages provided for by 42 Pa.C.S. §8371 and to punitive and consequential damages as allowed by law.

## II. Preliminary Objections[4]

ProAssurance asserts three preliminary objections to the Petition. First, ProAssurance demurs to Counts II, III, V, and VI, asserting that all four of the counts

---

[3] Section 8371 of Title 42 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

[4] This Court has explained our review of preliminary objections as follows:

> When considering preliminary objections, we accept as true all well-pleaded material facts in the petition for review and all reasonable inferences deducible from those facts. *Minor v. Kraynak*, 155 A.3d 114, 121 (Pa. Cmwlth. 2017) (citing *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014)). We will sustain a preliminary

pleaded against ProAssurance are legally insufficient because no breach of contract is pleaded against ProAssurance. Second, and alternatively, ProAssurance contends that paragraphs 5, 6, 10(2), 48, 54, 56, 60, 78(2), and 104 are insufficiently specific and should be stricken or repleaded with sufficient specificity. Third, and also alternatively, ProAssurance argues that paragraphs 6, 7, 10(6), 10(7), 49, 50, 74, 75, 78(5), 78(6), 81, and 82, as well as paragraphs 5 and 6 of the demand for relief, are scandalous and impertinent because those paragraphs relate only to contribution and unjust enrichment claims against ProAssurance, which claims appeared in previous versions of AMS's pleading but which were withdrawn and no longer appear in the Petition.

Mcare asserts two preliminary objections, both of which are demurrers. First, Mcare demurs to Count III as legally insufficient, objecting that Mcare is not the originally negligent party and has no responsibility for the underlying conduct that led to the Cadden medical malpractice claim against Adfinitas and Dr. Nam. Mcare further contends that it has no statutory responsibility to cover indemnification actions. Second, Mcare demurs to Count IV, contending that it is legally insufficient because it fails to meet or plead the elements of a claim of unjust enrichment.

---

objection only when it is clear and free from doubt that the facts as pleaded are legally insufficient to establish a right to relief. *Minor*, 155 A.3d at 121 (citing *Kittrell*, 88 A.3d at 1095).

*Kaba v. Berrier*, 275 A.3d 85, 88 (Pa. Cmwlth. 2022).

## III. Discussion

## A. ProAssurance's Preliminary Objections

## 1. Demurrers

ProAssurance's first preliminary objection consists of demurrers to Counts II, III, V, and VI under Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure. *See* Pa.R.Civ.P. 1028(a)(4) (providing that preliminary objections may be filed based on "legal insufficiency of a pleading (demurrer)"). A demurrer asserts that the plaintiff cannot obtain relief even if the well-pleaded material facts in a petition for review are accepted as true. *See, e.g.*, *Stilp v. Pa. Gen. Assembly*, 940 A.2d 1227, 1232 n.9 (Pa. 2007).

Regarding Count II of the Petition, AMS seeks a declaratory judgment that ProAssurance breached its Insurance Policies with Adfinitas and its duties to Adfinitas and Dr. Nam under Pennsylvania law. In its preliminary objection, ProAssurance argues that Count II fails to plead a breach of contract claim because it does not point to any provision of the insurance contract that was breached and because the policy at issue was a "claims made" policy that was no longer in effect by the time the Malpractice Action was filed. ProAssurance Br. at 7-8. However, the Petition plainly alleges that ProAssurance had a contractual duty to collect and remit assessments to Mcare and to inform Mcare of the existing insurance coverage for Adfinitas and Dr. Nam. Pet. at 8-9. AMS alleges that ProAssurance breached that contractual duty. *Id.* at 9. Moreover, ProAssurance's assertions of the policy type and expiration raise questions of fact not properly resolved on preliminary objections. *See P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105, 1112 (Pa. Cmwlth. 1996) (stating that "it would not be proper for this Court to address [a] factual dispute which cannot be resolved by the Court on the basis of the preliminary

objections"). Count II also alleges that ProAssurance breached duties to AMS and Dr. Nam that were imposed by Pennsylvania law. ProAssurance's preliminary objection does not assert legal insufficiency of that claim. Accordingly, ProAssurance's preliminary objection to Count II of the Petition is overruled.

Regarding Count III, AMS seeks indemnity from both Mcare and ProAssurance of $500,000 that AMS paid towards the settlement of the Malpractice Action after Mcare refused to do so as a result of ProAssurance's wrongful conduct. In its preliminary objection, ProAssurance demurs to Count III. In support of the demurrer, however, ProAssurance argues merely that "AMS admits that it was the primary medical malpractice insurance of Adfinitas" when the Malpractice Action was filed and that ProAssurance, therefore, "cannot be liable for any indemnity of Adfinitas" for the Malpractice Action settlement. ProAssurance Br. at 8. ProAssurance cites no authority in support of this bare averment and does not develop any legal argument to support it, leaving this Court unable to provide meaningful review of the issue. Accordingly, this argument is waived. *See Dobson Park Mgmt., LLC v. Prop. Mgmt., Inc.*, 203 A.3d 1134, 1139 (Pa. Cmwlth. 2019) (explaining that "[a]n issue that is not addressed or developed in the argument section of a brief may be waived") (first citing Pa.R.A.P. 2119(a); then citing *Pa. Gaming Control Bd. v. Unemployment Comp. Bd. of Rev.*, 47 A.3d 1262, 1265 (Pa. Cmwlth. 2012); and then citing *Watkins v. Unemployment Comp. Bd. of Rev.*, 689 A.2d 1019, 1022 (Pa. Cmwlth. 1997)). Accordingly, the preliminary objection to Count III of the Petition is overruled.

Similarly, regarding Counts V and VI of the Petition, which allege breach of contract and bad faith by ProAssurance, the demurrers simply assert, again with no citation of authority or development of an argument, that these counts

depend on the viability of the other claims against ProAssurance and, therefore, fail with them. In addition to being waived for lack of development, the demurrers to Counts V and VI are rejected because, as discussed above, we are overruling the demurrers to Counts II and III, on which the demurrers to Counts V and VI depend. Accordingly, the preliminary objections to Counts V and VI are likewise overruled.

## 2. Insufficient Specificity

Next, ProAssurance objects to paragraphs 5, 6, 10(2), 10(9), 48, 54, 56, 60, 78(2), and 104 of the Petition, asserting that the averments of those paragraphs are insufficiently specific.[5] Where an allegation in a complaint is so insufficiently

---

[5] The language challenged by ProAssurance avers:

> a. "[]ProAssurance has continued to fail to carry out its duties under the Insurance Policies by continuing to fail to correct its mistakes and breaches of the Insurance Policies. . . ." []Pet. ¶ 5.
>
> b. "Because ProAssurance failed to and continues to fail to carry out its duties under the Insurance Policies, or correct its breaches of contract. . . ." []Pet. ¶ 6.
>
> c. "ProAssurance improperly breached its insurance contracts with Adfinitas. . . ." []Pet. ¶ 10(2).
>
> d. "ProAssurance acted in reckless disregard of the rights of Adfinitas and its employed physician, Dr. Nam, without reasonable basis, in a manner that constitutes bad faith." []Pet. ¶ 10(9).
>
> e. "Because of the errors of ProAssurance. . . ." []Pet. ¶ 48.
>
> f. "To date, ProAssurance has failed to discharge its duties to its insured Adfinitas, and Dr. Nam." []Pet. ¶ 54.
>
> g. "As a result of the actions and failures to take action on the part of []Mcare[] and ProAssurance with regard to the [Malpractice Action]. . . ." []Pet. ¶ 56.

11

specific that a defendant is unable to prepare a defense, the defendant may file a preliminary objection under Rule 1028(a)(3) of the Pennsylvania Rules of Civil Procedure requesting that the court strike the insufficient paragraphs or direct a more specific pleading. *See* Pa.R.Civ.P. 1028(a)(3); *Connor v. Allegheny Gen. Hosp.*, 461 A.2d 600, 604 n.3 (Pa. 1983).

ProAssurance asserts that the challenged paragraphs constitute "overly broad" averments consisting merely of "vague, catch-all provisions" that "do not sufficiently identify the acts or omissions upon which AMS asserts liability" and therefore "pose a threat of amplification much later in the case, allowing AMS to introduce virtually any new allegation of negligence or conduct related to its underlying claims long after the pleadings are closed." ProAssurance Br. at 10-11. We disagree.

In *Connor*, the complaint alleged negligence, specifically medical malpractice, consisting of specific acts as well as "otherwise failing to use due care and caution under the circumstances." *Connor*, 461 A.2d at 601. The Pennsylvania Supreme Court held that the plaintiff was permitted to amend her complaint to list the "other" ways in which the defendant had failed to use due care in addition to those already specified. *Id.* at 602. The Supreme Court also observed that if the

---

h. "AMS also seeks Judgment that ProAssurance acted in bad faith toward[] its insured, Adfinitas, and is liable for bad faith damages." []Pet. ¶ 60.

i. "ProAssurance improperly breached its insurance contracts with Adfinitas. . . ." []Pet. ¶ 78(2).

j. "ProAssurance erroneously and in bad faith subjected Adfinitas and its employed physician, Dr. Nam to personal liability, which risk it wrongfully allowed to be abated by AMS." []Pet. ¶ 104.

ProAssurance Br. at 10-11.

defendant could not tell how it was "otherwise" negligent beyond the conduct specifically alleged, it could have filed a preliminary objection seeking a more specific pleading or asking that the vague language be stricken from the complaint. *Id.* at 602 n.3.

Here, however, the Petition, read as a whole, clearly avers that ProAssurance's complained-of conduct consists of failure to inform Mcare of Dr. Nam's insurance coverage and the assessment payment made to ProAssurance on his behalf, as well as failure to remit the assessment payment timely to Mcare on Dr. Nam's behalf. In contrast to the improperly vague language in *Connor*, the challenged paragraphs here manifestly refer to the specified conduct and not to any other, unspecified conduct by ProAssurance. Moreover, as the Malpractice Action has been settled and the funds at issue relate solely to payment of the settlement amount, there is no other relevant conduct by ProAssurance that AMS could later allege that would be pertinent to the instant dispute. Accordingly, ProAssurance's preliminary objection asserting insufficient specificity is overruled.

### 3. Scandalous and Impertinent Matter

In its final preliminary objection, ProAssurance asks this Court to strike paragraphs 6, 7, 10(6), 10(7), 49, 50, 74, 75, 78(5), 78(6), 81, and 82,[6] as well as

---

[6] The listed portions of the Petition allege, in pertinent part:

"AMS was forced to contribute an additional $500,000 towards settlement . . . on behalf of Adfinitas and Dr. Nam . . . . The additional payment of $500,000. . . is more than AMS's share of common liability and was money owed by the Mcare Fund and/or ProAssurance." Pet., ¶ 6.

"AMS discharged the debt owed by ProAssurance and/or Mcare and/or the common liability on behalf of []Mcare[] and ProAssurance . . . ." Pet., ¶ 7.

paragraphs 5 and 6 of the demand for relief in Count II. ProAssurance asserts that these paragraphs and requests for relief are scandalous and impertinent because they relate only to contribution and unjust enrichment claims against ProAssurance that appeared in previous versions of AMS's pleading but which were withdrawn and no

"The additional payment of $500,000 . . . AMS contributed towards the settlement of the Cadden claim is more than AMS's share of the common liability . . . . AMS discharged the debt owed by ProAssurance and/or Mcare and/or the common liability on behalf of []Mcare[] and ProAssurance . . . ." Pet., ¶ 10(6).

"AMS or Adfinitas had a common liability for the [Malpractice Action] with ProAssurance and Mcare." Pet., ¶ 10(7).

"The additional $500,000 that AMS was forced to contribute toward[] settlement . . . was over and above the amount of settlement funds owed by AMS . . . . AMS discharged . . . the common liability . . . of the Mcare Fund and ProAssurance." Pet., ¶ 49.

"The additional payment of $500,000 that AMS contributed towards the settlement is more than the share of common liability of AMS or Adfinitas. . . . AMS discharged the liability of ProAssurance and the Mcare Fund, and extinguished []Cadden's claims against ProAssurance and the Mcare Fund . . . ." Pet., ¶ 50.

"By virtue of its payment of an additional $500,000 towards the settlement . . . , AMS discharged the common liability of ProAssurance, and extinguished []Cadden's claims against ProAssurance . . . ." Pet., ¶ 74.

"The additional payment of $500,000 in addition to the $700,000 that AMS contributed towards the settlement is more than AMS's pro rata share of common liability. . . ." Pet., ¶ 75.

"AMS or Adfinitas had a common liability for the [Malpractice Action] with ProAssurance[.]" Pet., ¶ 78(5).

"The additional payment of $500,000 . . . that AMS contributed towards the settlement . . . is more than AMS's share of the common liability . . . . AMS discharged the debt owed by ProAssurance, and/or the common liability on behalf of ProAssurance . . . ." Pet., ¶ 78(6).

"By virtue of the settlement of the [Malpractice Action], AMS discharged the common liability of Mcare and ProAssurance, paid a debt owed by ProAssurance and Mcare, and extinguished the claims brought against Mcare and ProAssurance in that claim." Pet., ¶ 81.

"The payment of the additional $500,000 towards settlement of the Cadden claim, is more than the pro rata share of common liability of AMS, and AMS was compelled to pay this additional $500,000 on behalf of ProAssurance and Mcare, under the circumstances." Pet., ¶ 82.

14

longer appear in the Petition. An averment in a pleading is scandalous or impertinent and may be stricken pursuant to preliminary objections filed under Pennsylvania Rule of Civil Procedure 1028(a)(2) where the allegations are "immaterial and inappropriate to the proof of the cause of action." *Common Cause/Pa. v. Commonwealth of Pa.*, 710 A.2d 108, 115 (Pa. Cmwlth. 1998) (citing *Dep't of Env't Res. v. Peggs Run Coal Co.*, 423 A.2d 765 (Pa. Cmwlth. 1980)).

ProAssurance posits that AMS, despite having withdrawn its previous claim for contribution, continues to assert in the Petition that ProAssurance is subject to "common liability" for which ProAssurance cannot be liable because it is not a tortfeasor named in the Malpractice Action. ProAssurance Br. at 13-15. We do not read the Petition as asserting such liability. With a few exceptions, the listed numbered paragraphs of the Petition do not allege that ProAssurance was a tortfeasor liable for contribution, but simply that Mcare was legally obligated to provide $500,000 from insurance assessments toward the settlement of the Malpractice Action and that ProAssurance's alleged failure to perform its obligations regarding transmittal of the assessment for Dr. Nam caused Mcare to refuse to pay its share of the settlement.

The exceptions are paragraphs 10(7), 78(5), and 81, which allege that Adfinitas, AMS, and ProAssurance had "a common liability" for the claims brought in the Malpractice Action. Pet., ¶¶ 10(7), 78(5) & 81. These paragraphs do not assert liability for insurance coverage, but rather, suggest that the parties here were jointly liable as tortfeasors for the conduct that led to the Malpractice Action. There is no count in the Petition that seeks to impose such liability, nor could there be, inasmuch as the instant action is purely an insurance coverage dispute. We agree with ProAssurance that the averments of paragraphs 10(7), 78(5), and 81 are

15

scandalous and/or impertinent. Accordingly, ProAssurance's preliminary objection to paragraphs 10(7), 78(5), and 81 is sustained, and paragraphs 10(7), 78(5), and 81 are stricken from the Petition. ProAssurance's preliminary objection is overruled as to all other numbered paragraphs of the Petition.

ProAssurance similarly challenges demands for relief 5 and 6 in Count II of the Petition. Demand 5 seeks a declaration that "AMS or Adfinitas had a common liability for the [Malpractice Action] with ProAssurance[.]" Pet. at 23. As with paragraphs 10(7), 78(5) and 81 of the Petition, demand 5 in Count II does not assert liability for insurance coverage, but rather, suggests that the parties here were jointly liable as tortfeasors for the conduct that led to the Malpractice Action. We agree with ProAssurance that the averment of demand for relief 5 in Count II is scandalous and/or impertinent. Accordingly, ProAssurance's preliminary objection to demand for relief 5 in Count II is sustained, and that demand for relief is stricken from the Petition.

By contrast, demand for relief 6 in Count II seeks a declaration that "[t]he additional payment of $500,000 . . . towards the settlement . . . is more than AMS's share of the common liability . . . . By this payment, AMS discharged the debt owed by ProAssurance, and/or the common liability on behalf of ProAssurance . . . ." Pet. at 23. Demand for relief 6 does not allege that ProAssurance was a tortfeasor directly liable in the Malpractice Action, but simply that there was a common liability among AMS, ProAssurance, and Mcare for payment of the settlement. *Id.* That averment relates to liability for insurance coverage, not to status as a tortfeasor in the underlying Malpractice Action. Accordingly, ProAssurance's preliminary objection to demand for relief 6 in Count II of the Petition is overruled.

16

## B. Mcare's Preliminary Objections

Mcare's preliminary objections consist of demurrers to Counts III and IV. We discuss each in turn.

## 1. Count III – Indemnification

As discussed above, regarding Count III, AMS seeks indemnification from both Mcare and ProAssurance of $500,000 that AMS paid towards the settlement of the Malpractice Action after Mcare refused to do so as a result of ProAssurance's wrongful conduct. In support of its preliminary objection to Count III, Mcare asserts three arguments. We discern no merit in any of the three.

First, Mcare argues that an indemnification claim will not lie because Mcare is not a tortfeasor that was "actually responsible for the accident which occasioned the loss[]" in the underlying Malpractice Action. Mcare Br. at 6 (first citing *Willet v. Pa. Med. Catastrophe Loss Fund*, 702 A.2d 850, 854 (Pa. 1997); and then citing *Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986)). However, Mcare takes too narrow a position regarding the circumstances in which one party may seek indemnification from another. As our Supreme Court has observed, "the duty to indemnify will be recognized in cases where the community opinion would consider that in justice the responsibility should rest upon one rather than the other." *Willet*, 702 A.2d at 854 (first quoting *Mixter v. Mack Trucks, Inc.*, 308 A.2d 139, 141-42 (Pa. Super. 1973), and then citing Wade Prosser, *The Law of Torts* 33 (4th ed. 1971)) (additional quotation marks omitted). Here, AMS seeks recovery of $500,000 for which AMS alleges Mcare is statutorily responsible and which AMS alleges it paid on Mcare's behalf. At the preliminary objection stage, we cannot

conclude that, in justice, the responsibility for payment of the $500,000 at issue should not rest upon Mcare rather than on AMS. Therefore, we reject this argument.

Second, Mcare contends that indemnification is not the proper claim because indemnity is "not a fault sharing mechanism" and relates solely to shifting the entire burden of liability onto the at-fault party. Mcare Br. at 6-7 (first citing *Willet*, 702 A.2d at 854; and then citing *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951)). However, the liability at issue in this separate action is not the entire settlement amount in the underlying Malpractice Action, but only the $500,000 AMS alleges Mcare was statutorily obligated to pay and which AMS alleges that it was forced to pay toward the settlement. In seeking indemnification, AMS is not attempting to use it as a fault sharing mechanism. Rather, AMS is attempting to collect the entire amount for which it contends Mcare is statutorily responsible. At the preliminary objection stage, we cannot conclude that invoking indemnification for this purpose is improper. Therefore, we reject this argument as well.

Third, Mcare posits that "the Mcare Act . . . does not require Mcare to provide coverage for indemnification actions." Mcare Br. at 7 (citing *Bender v. Pa. Ins. Dep't*, 893 A.2d 161 (Pa. Cmwlth. 2006)). Mcare mistakes the purport of the *Bender* decision. In *Bender*, the plaintiff filed a medical malpractice action against a hospital and the plaintiff's attending physician. *Id.* at 162. Years later, the plaintiff sought to add other doctors to the claim but was precluded by the statute of limitations from doing so. *Id.* After paying an adverse verdict, the defendants filed a separate action seeking indemnification from the additional doctors who had not been added to the malpractice action. *Id.* Because Mcare is statutorily obligated only with regard to a "medical professional liability claim," this Court concluded

18

that Mcare had no responsibility regarding the separate indemnification action. *Id.* at 163 (quoting Section 103 of the Mcare Act, 40 P.S. § 1303.103). *Bender* is clearly distinguishable from the instant matter. Here, AMS is not seeking to impose liability on a new tortfeasor in a new action demanding that Mcare indemnify a new defendant for tort liability in relation to the negligence that gave rise to the Malpractice Action. Rather, AMS is seeking to recover from Mcare the amount AMS contends Mcare was always responsible for in the settlement of the Malpractice Action but refused to pay. Nothing in the Mcare Act precludes liability on the part of Mcare for indemnification of sums it was statutorily required to pay but did not. Therefore, we reject Mcare's third argument.

Accordingly, Mcare's preliminary objection in the nature of a demurrer to Count III is overruled.

### 2. Count IV – Unjust Enrichment

"Unjust enrichment is an equitable remedy, defined as 'the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution.'" *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (quoting *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013)). Here, Mcare maintains that

> [t]here are insufficient facts to demonstrate that AMS conferred a concrete benefit to Mcare, that Mcare retained said benefit, and that Mcare either wrongfully secured a benefit or otherwise received a benefit that would be unconscionable for it to retain. Mcare was not a party to the [Malpractice Action] and was not involved in the underlying medical care. As such, AMS did not discharge a common liability, as Mcare did not have any liability in the underlying case. Rather, AMS has pled, at most, a

19

> declaratory judgment action seeking to have this Court declare the rights and responsibilities of the parties with respect to the coverage dispute at issue in this case.

Mcare Br. at 9. Mcare is simply incorrect. AMS plainly alleges that it conferred a benefit on Mcare by paying Mcare's statutorily mandated share of the settlement in the Malpractice Action. That Mcare was not a named tortfeasor defendant in the Malpractice Action is irrelevant; AMS alleges only that Mcare bore responsibility to AMS for AMS's payment of Mcare's share of the insurance coverage for the defendants' liability in the Malpractice Action.

Accordingly, Mcare's preliminary objection in the nature of a demurrer to Count IV is overruled.

## IV. Conclusion

Based on the foregoing discussion, we sustain ProAssurance's preliminary objection to paragraphs 10(7), 78(5), and 81 and to demand for relief 5 in Count II and otherwise overrule the preliminary objections of ProAssurance. We overrule Mcare's preliminary objections.

_____
CHRISTINE FIZZANO CANNON, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Applied Medico-Legal Solutions
Risk Retention Group, Inc.,
                        Petitioner

        v.

ProAssurance Specialty Insurance
Company, Inc. and the Medical Care
Availability and Reduction of
Error Fund,
                     Respondents

:
:
:
:
:
:
:
:
:
:
:
:
:   No. 193 M.D. 2025
:

**O R D E R**

AND NOW, this 26th day of June, 2026, upon review of Respondents' preliminary objections to Petitioner's Second Amended Petition for Review, the preliminary objection of ProAssurance Specialty Insurance Company, Inc. (ProAssurance) to paragraphs 10(7), 78(5), and 81 and to demand for relief 5 in Count II is SUSTAINED. Paragraphs 10(7), 78(5), and 81 and demand for relief 5 in Count II are stricken. ProAssurance's preliminary objections are otherwise OVERRULED. The preliminary objections of the Medical Care Availability and Reduction of Error Fund are OVERRULED.

_____
CHRISTINE FIZZANO CANNON, Judge